Michael Friedland (State Bar No. 157,217)
mfriedland@kmob.com
Amy C. Chun (Bar No. 204052)
amy.chun@knobbe.com
Ali S. Razai (Bar No. 246,922)
ali.razai@knobbe.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
Telephone:  949-760-0404
Facsimile:  949-760-9502

Boris Zelkind (State Bar No. 214,014)
boris.zelkind@kmob.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
12790 El Camino Real
San Diego, CA  92130
Phone: (858) 707-4000
Facsimile: (858) 707-4001

Attorneys for Plaintiff
SUNPOWER CORPORATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

SUNPOWER CORPORATION, a
Delaware corporation,

           Plaintiff,

      v.

SUNEDISON, INC., a Delaware
corporation; SHANE MESSER, an
individual; KENDALL FONG, an
individual; and VIKAS DESAI, an
individual,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:15-cv-02462-WHO

**COMPLAINT FOR:**
   **VIOLATION OF COMPUTER
     FRAUD AND ABUSE ACT;
   TRADE SECRET
     MISAPPROPRIATION;
   BREACH OF CONTRACT;
   BREACH OF CONFIDENCE;
   CONVERSION;
   TRESPASS TO CHATTELS;
   INTERFERENCE WITH
     PROSPECTIVE BUSINESS
     ADVANTAGE;
   BREACH OF IMPLIED COVENANT
     OF GOOD FAITH AND FAIR
     DEALING;
   TORTIOUS INTERFERENCE WITH
     CONTRACTUAL
     RELATIONSHIPS;
   INDUCED BREACH OF
     CONTRACT;
   CONSPIRACY TO BREACH
     CONTRACT;
   BREACH OF DUTY OF LOYALTY;
     AND
   COMMON LAW AND STATUTORY
     UNFAIR COMPETITION**

**DEMAND FOR JURY TRIAL**

**COMPLAINT**

Plaintiff SUNPOWER CORPORATION ("SunPower") hereby complains of Defendants SUNEDISON, INC. ("SunEdison"), SHANE MESSER ("Messer"), KENDALL FONG ("Fong"), and VIKAS DESAI ("Desai") (collectively, "DEFENDANTS"), and alleges as follows:

**JURISDICTION**

1.     This court has original subject matter jurisdiction over the claims in this action that relate to the Computer Fraud and Abuse Act pursuant to 18 U.S.C. §§ 1030(a)(2)(c), (a)(4), and (g) and 28 U.S.C. § 1331, as these claims arise under the laws of the United States. This Court has supplemental jurisdiction over the claims in the Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claim that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     This Court has personal jurisdiction over Defendants because each of the Defendants has a continuous, systematic, and substantial presence within this judicial district, including by committing the acts that form a substantial part of the events or omissions giving rise to SunPower's claims within this judicial district.

**VENUE**

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the dispute occurred in this district, and this Court has personal jurisdiction over each of the parties as alleged throughout this complaint.

**INTRADISTRICT ASSIGNMENT**

4.     Assignment to the San Francisco Division is appropriate pursuant to Civil Local Rule 3-2(c) and 3-2(e) because a substantial part of the events that give rise to SunPower's claims occurred in San Mateo County, California, where SunEdison has its Solar Headquarters.

/ / /

/ / /

/ / /

**COMPLAINT**

## THE PARTIES

5.     Plaintiff SunPower is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in this district at 77 Rio Robles, San Jose, CA 95134.

6.     SunPower is informed and believes, and thereon alleges, that SunEdison is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in this district at 600 Clipper Drive, Belmont, CA 94002.

7.     SunPower is informed and believes, and thereon alleges, that Messer is an individual currently residing in Colorado.

8.     SunPower is informed and believes, and thereon alleges, that Fong is an individual currently residing in the Northern District of California.

9.     SunPower is informed and believes, and thereon alleges, that Desai is an individual currently residing in the Northern District of California.

## STATEMENT OF FACTS

10.     Founded nearly 30 years ago and headquartered in Northern California, SunPower is a leading global energy services provider.  SunPower has a history of pioneering breakthrough technologies and continues to design and deliver high quality solar cells and solar panels that are unmatched in reliability, efficiency and performance.

11.     SunPower designs, manufactures, installs and distributes high efficiency solar panels systems for residential and commercial markets, as well as power plant-scale arrays around the world.

12.     SunPower has spent a significant amount of time and effort to amass and grow its distribution and sales channels, including the cultivation of its ongoing relationships with dealers who offer SunPower products and financial institutions that help provide funding to consumers who want to use SunPower products.  SunPower's efforts have included highly sensitive and confidential activities such as conducting internal competitive analyses, generating market projections, developing negotiation strategies, calculating term sheets for

/ / /

1    its dealers and financial partners, as well as forming internal back-end architectures
2    customized and tailored to support and manage its business.

3         13.    From 2011 to 2014, over 20 employees from SunPower's offices in Italy,
4    Spain and the United States left SunPower to join SunEdison, one of SunPower's direct
5    competitors.  During this same timeframe, several former SunPower employees contacted
6    their former colleagues at SunPower to solicit and encourage them to leave SunPower to join
7    SunEdison.  In addition, near the end of their employment with SunPower, several of the
8    former SunPower employees electronically copied large sets of documents from the
9    SunPower computers and servers.  In fact, on May 25, 2015, the Court of Milan found that
10   former SunPower employees may have taken confidential information owned by SunPower
11   and disclosed it to SunEdison.  The Court of Milan issued an *ex parte* Order allowing
12   SunPower to search the contents of files, servers, personal computers, USB drives and CD-
13   ROMs belonging to SunEdison's Italian subsidiaries and seven former SunPower employees
14   now employed by SunEdison. The Order requires SunEdison to cooperate with the search for
15   SunPower's confidential information, including electronic data and physical documents.
16   SunPower is informed and believes, and thereon alleges, that Desai, SunEdison's President of
17   Residential and Small Commercial, personally solicited and encouraged some SunPower
18   employees to leave SunPower to join SunEdison.

19        14.    This action, in part, seeks relief for the theft of SunPower's highly confidential
20   information and trade secrets by two of SunPower's former employees in the U.S., Messer
21   and Fong, who left SunPower to work at SunEdison, in direct competition with SunPower.
22   SunPower is informed and believes, and thereon alleges, that Messer and Fong betrayed
23   SunPower's trust by stealing SunPower's trade secrets, including highly confidential and
24   propriety SunPower dealer information, distribution channel strategy information, market
25   research, sales roadmaps, and other highly confidential documents.  SunPower is informed
26   and believes, and thereon alleges, that Messer, Fong, and SunEdison are now using
27   SunPower's own trade secrets to compete with SunPower.

28   / / /

**COMPLAINT**

15. SunPower performed a forensic analysis of Messer and Fong's laptop computers and work accounts. The results showed that right before leaving SunPower, hundreds or thousands of SunPower files were accessed under Messer's account and likely copied onto one or more removable devices. The results also showed that over 9,500 files were accessed under Fong's account from a SunPower computer or server during his last six weeks at SunPower, with over 4,000 files being accessed in a 80-minute span three weeks before his final day. These SunPower files were likely copied onto a removable device or into an unauthorized, non-SunPower storage location. The copied and accessed files included numerous highly confidential files as well as SunPower's trade secrets, including information directly relevant to Messer and Fong's new employment with SunEdison. During their employment with SunPower, Messer and Fong each executed employment contracts, agreeing to certain obligations, including keeping SunPower confidential and trade secret information confidential; returning to SunPower confidential or trade secret information in their possession; and refraining from recruiting SunPower employees for a period of two years following termination.

**A.     The SunPower Employment Agreements and Policies**

16. Messer was employed at SunPower from July 12, 2007 through July 29, 2011. As of Messer's last day of employment with SunPower, his title was Area Sales Manager. As part of his employment at SunPower, Messer agreed to, signed, and undertook the obligations set forth in the SunPower Agreement Concerning Proprietary Information and Inventions ("Messer Agreement"), attached hereto as Exhibit A.

17. Fong was employed at SunPower from April 22, 2009 through August 19, 2013. As of Fong's last day of employment with SunPower, his title was Senior Director, Global Brand. As part of his employment at SunPower, Fong agreed to, signed, and undertook the obligations set forth in the SunPower Agreement Concerning Proprietary Information and Inventions ("Fong Agreement"), attached hereto as Exhibit B.

///

///

18.     By agreeing to and signing the SunPower Agreement Concerning Proprietary Information and Inventions, Messer and Fong each assumed certain obligations as a condition of their employment at SunPower, including the following:

a.     Messer and Fong each acknowledged that they would have access to proprietary information concerning SunPower's business or activities, including research and development work, new product, and other service design and development material, market plans, and other proprietary information of SunPower.

b.     Messer and Fong each agreed that, during and after their employment at SunPower, they would not utilize any such information as described above for their own or others benefit or to disclose any such information to which they may have access to anyone outside SunPower, unless otherwise authorized in writing by SunPower.

c.     Messer and Fong each agreed that, upon termination, they would return to SunPower all SunPower information of the kind thereof, in whatever form or medium, including all copies.

d.     Messer and Fong each agreed to refrain from engaging in any business or activity that is either competitive with, or places them in a conflict with the full, faithful, and efficient discharge of their employment duties at SunPower.

e.     Messer and Fong each agreed that disputes relating to the SunPower Agreement Concerning Proprietary Information and Inventions would be governed and construed according to the laws of the State of California, without regard to its conflict of interest laws.

19.     During Messer and Fong employment at SunPower, SunPower had several policies in place governing the use of SunPower computers and related equipment, including for example the "Acceptable Use of SunPower Information Resources" policy, attached hereto as Exhibit C, the "Information Access Control Practices" policy, attached hereto as Exhibit D, the "Information Classification, Labeling, and Handling" policy, attached hereto as Exhibit E, and the "File Storage and Transfer Guidelines" policy, attached hereto as Exhibit F (collectively, "SunPower Computer Policies").  As part of their employment,

Messer and Fong were given copies of the SunPower Computer Policies.  Messer and Fong were each informed of and subject to the obligations set forth in the SunPower Computer Policies, including the following:

a.      Messer and Fong were each required to protect SunPower's intellectual property and keep it confidential.

b.      Messer and Fong were each required not to forward, provide access, store, distribute, and/or process SunPower confidential information to unauthorized people or places, or post SunPower confidential information on Internet bulletin boards, chat rooms, or other electronic forums.

c.      Messer and Fong were each prohibited from accessing SunPower information resources, company records, files, information, or any other data when there is no proper, authorized, job-related need for such information.

d.      Messer and Fong were each prohibited from connecting any non-SunPower-owned equipment to SunPower's network.

e.      Messer and Fong were each prohibited from using USB drives (including flash memory, USB sticks, or external USB hard drives) for file storage or transfer.

20.      As part of the Messer and Fong Agreements, Messer and Fong agreed that SunPower had proprietary rights to SunPower's proprietary information ("SunPower's Proprietary Information"), which included confidential and non-confidential information, which was of the kind provided only to those few employees at SunPower having a need to know the information to carry out their work responsibilities.   SunPower's Proprietary Information included, but was not limited to, SunPower's trade secret information.

**B.      Access to SunPower's Confidential Information**

21.      As a result of their positions at SunPower, Messer and Fong were each privy to and obtained SunPower's Proprietary Information.

22.      SunPower's Proprietary Information includes ideas, techniques, systems, formulas, technical information, programs, know-how, copyrightable material, notes, records, drawings, designs, improvements, processes, and similar developments, including those

developed, created, discovered, made, written, or obtained by Messer, Fong and other SunPower employees.

23.     SunPower's Proprietary Information also includes computer programs, computer software, pricing lists, business plans, financial projections and reports, business strategies, internal operating procedures, other confidential business information, information concerning current or any future and proposed work, services or products, the fact that such work, services or products are planned, processes, process parameters, methods or practice of operations or sales or lease, schematics and related documentation, distribution lists, financial information, customer needs, dealer needs, market analysis, other compilations of information which relate to SunPower's business that are not general public information, SunPower's relations with its employees, including salaries, job classifications, and skill levels, financial sales and marketing data, financial, sales, marketing, and business plans or strategies, nonpublic pricing, and other information designated by SunPower as confidential.

24.     SunPower sells and leases its products to end-users through dealers.  Over the years, SunPower has spent time, money, and effort developing and optimizing its dealer network.  SunPower's Proprietary Information includes, among other things, information related to SunPower's dealer networks, including dealer lists, dealer satisfaction scores, dealer volumes, dealer rebates, dealer discounts, dealer pricing, dealer lending terms, dealer sales momentum, dealer cost structure, SunPower's profit realization from dealers in the network and other competitive information about SunPower's dealer network.

25.     SunPower connects its dealers with lenders as part of its loan option for end-users seeking to purchase SunPower's products.  Over the years, SunPower has spent time, money, and effort developing a lender network.  Moreover, SunPower has spent years negotiating competitive terms for the dealers that use SunPower's lenders.  SunPower's Proprietary Information includes, its lender networks, including lender lists, lending terms, and other competitive information about SunPower's lender network.

26.     In 2012, SunPower began to confidentially develop an in-house financial portfolio management system to fully service its leases in-house, which was a significant

departure from the industry standard of outsourcing all lease servicing.  SunPower spent considerable time, employee resources and millions of dollars developing, implementing, and customizing SunPower's in-house portfolio management system.  SunPower's Proprietary Information includes, among other things, information relating to the unique system and processes that SunPower employs to handle the in-house servicing of SunPower's financial portfolio.

27.    SunPower is headquartered in Northern California and its main computer servers and files are located in Northern California where large amounts of SunPower's Proprietary Information are stored.  Select SunPower employees are also given SunPower computers where they also store SunPower's Proprietary Information.

28.    SunPower employees regularly access data contained on these servers and computers.  While employed by SunPower, Messer and Fong regularly accessed and modified SunPower files stored on SunPower's servers and computers, including SunPower's Proprietary Information.

**C.     Messer**

29.    SunPower is informed and believes, and thereon alleges, that at or around 10:00 pm on June 3, 2011, Messer accessed and copied over 4,300 files from a SunPower computer or server during a fifteen-minute span.  Many of the files Messer accessed contained SunPower's Proprietary Information.

30.    Shortly before leaving SunPower, Messer connected one or more Universal Series Bus ("USB") devices to his SunPower computer. SunPower is informed and believes, and thereon alleges that Messer copied electronic files containing SunPower's Proprietary Information, including computer programs, computer software, pricing lists, business plans, financial projections and reports, business strategies, internal operating procedures, other confidential business information, information concerning current or any future and proposed work, services or products, processes, process parameters, methods or practice of operations or sales or lease, schematics and related documentation, distribution lists, financial information, customer needs, dealer needs, market analysis, financial sales and marketing

data, business plans and strategies, pricing information, information related to SunPower's dealer networks, including dealer lists, dealer satisfaction scores, dealer volumes, dealer rebates, dealer discounts, dealer pricing, dealer lending terms, dealer sales momentum, dealer cost structure, SunPower's profit realization from dealers in the dealer network and other competitive information about SunPower's dealer network, SunPower's lender networks, including lender lists, lending terms, and other competitive information about SunPower's lender network and other proprietary information.

31.    As part of the Messer Agreement, Messer agreed that SunPower had proprietary rights to its confidential and non-confidential information, including SunPower's trade secret information.

32.    SunPower is informed and believes, and thereon alleges, that Messer violated the terms of the Messer Agreement at least by failing to return SunPower's Proprietary Information that was downloaded and copied onto the one or more USB devices.

33.    SunPower is informed and believes, and thereon alleges, that Messer violated the terms of the SunPower Computer Policies at least by connecting one or more USB devices to a SunPower computer and by using USB devices to store SunPower's Proprietary Information.

34.    SunPower is informed and believes, and thereon alleges, that immediately following Messer's termination of his employment with SunPower, Messer was employed by SunEdison, and Messer's current title at SunEdison is Vice President Sales, RCS North America.

35.    SunPower is informed and believes, and thereon alleges, that in direct violation of the Messer Agreement, and the SunPower Computer Policies, Messer disclosed to SunEdison at least some of SunPower's Proprietary Information that he was privy to and obtained as a result of his employment at SunPower.

36.    SunPower is informed and believes, and thereon alleges, that in direct violation of the Messer Agreement, and the SunPower Computer Policies, Messer transferred

/ / /

1    some or all of the stolen computer files containing SunPower's Proprietary Information to

2    computers and devices at SunEdison.

**D.     Fong**

4         37.     SunPower is informed and believes, and thereon alleges, that in the six weeks

5    preceding his final day of employment with SunPower, Fong accessed over 9,500 files from a

6    SunPower computer or server, many containing SunPower's Proprietary Information.

7         38.     SunPower is informed and believes, and thereon alleges, that on July 31, 2013,

8    less than three weeks before leaving SunPower, Fong accessed and copied thousands of files

9    from SunPower's server or computers during an 80-minute span.

10        39.     SunPower is informed and believes, and thereon alleges, that shortly before

11   leaving SunPower, Fong used a unauthorized, non-SunPower storage device or unauthorized

12   non-SunPower storage location to copy computer files containing SunPower's Proprietary

13   Information including, for example, computer programs, computer software, pricing lists,

14   business plans, financial projections and reports, business strategies, internal operating

15   procedures, other confidential business information, information concerning current or any

16   future and proposed work, services or products, processes, process parameters, methods or

17   practice of operations or sales or lease, schematics and related documentation, distribution

18   lists, financial information, customer needs, dealer needs, market analysis, financial sales and

19   marketing data, business plans and strategies, pricing information, information related to

20   SunPower's dealer networks, including dealer lists, dealer satisfaction scores, dealer volumes,

21   dealer rebates, dealer discounts, dealer pricing, dealer lending terms, dealer sales momentum,

22   dealer cost structure, SunPower's profit realization from dealers in the dealer network and

23   other competitive information about SunPower's dealer network, SunPower's lender

24   networks, including lender lists, lending terms, and other competitive information about

25   SunPower's lender network, information relating to the unique system that SunPower

26   employs to handle the in-house servicing of SunPower's financial portfolio, and other

27   proprietary information.

28   / / /

40.     As part of the Fong Agreement, Fong agreed that SunPower had proprietary rights to its confidential and non-confidential information, including SunPower's trade secret information.

41.     Fong violated the terms of the Fong Agreement at least by failing to return SunPower's Proprietary Information that was downloaded and copied onto the USB device(s) or into an unauthorized, non-SunPower storage location.

42.     Fong violated the terms of the SunPower Computer Policies at least by connecting a USB device to a SunPower computer and by using a USB drive to store SunPower's Proprietary Information or by storing such information in an unauthorized, non-SunPower storage location.

43.     SunPower is informed and believes, and thereon alleges, that following Fong's termination of his employment with SunPower, Fong was employed by SunEdison, and Fong's current title at SunEdison is Vice President of Global Marketing and Channel Development, Residential and Small Commercial.

44.     SunPower is informed and believes, and thereon alleges, that in direct violation of the Fong Agreement, and the SunPower Computer Policies, Fong disclosed to SunEdison at least some of SunPower's Proprietary Information that he was privy to and obtained as a result of his employment at SunPower.

45.     SunPower is informed and believes, and thereon alleges, that in direct violation of the Fong Agreement, and the SunPower Computer Policies, Messer transferred some or all of the stolen computer files containing SunPower's Proprietary Information to computers and devices at SunEdison.

**E.     Desai**

46.     On or about April 9, 2004, Desai accepted an offer of employment from SunPower to become a Product Manager.  As part of his employment at SunPower, Desai agreed to, signed, and undertook the obligations set forth in a SunPower Employee Nondisclosure Agreement ("Desai Agreement"), attached hereto as Exhibit G.

/ / /

47.     By agreeing to and signing the Desai Agreement, Desai assumed certain obligations as a condition of his employment at SunPower, including the following:

    a.  Desai agreed that he would not, during or subsequent to the term of the Desai Agreement, use SunPower's Confidential Information for any purpose whatsoever other than the performance of his responsibility as an employee of SunPower.

    b.  Desai agreed that SunPower's Confidential Information included any SunPower proprietary information, technical data, trade secrets or know-how, including, but not limited to research, product plans, products, services, suppliers, supplier lists, customers, customer lists, markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed by SunPower either directly or indirectly in writing, orally or by drawings or inspection of parts or equipment.

48.     As part of the Desai Agreement, Desai agreed that SunPower had proprietary rights to its confidential and non-confidential information, including SunPower's trade secret information.

49.     By October 2008, Desai was promoted to Vice President at SunPower.  Desai resigned his employment with SunPower in April 2010 to join PVT Solar, Inc. ("PVT Solar") as the company's Chief Executive Officer.  At that time, PVT Solar was an early-stage start up that was trying to break into the residential solar market.  PVT Solar did not have an established infrastructure, a dealer network, any significant market share, resources, or the know-how to compete in the residential solar market.

50.     In November 2010, SunPower sued PVT Solar and several former SunPower employees working for PVT Solar, for, *inter alia*, misappropriation of trade secrets.  *See SunPower Corp. v. PVT Solar, Inc.* (Case No. 1-10-CV-187278 (Sup. Ct. Cal. Santa Clara County)) ("PVT Solar Litigation").

/ / /

51.     In the PVT Solar Litigation, SunPower alleged that Desai had been embittered about being passed over for a promotion prior to his departure from SunPower and, recognizing that PVT Solar did not have the data, relationships, or infrastructure to succeed in the residential solar market, Desai decided to target for hire certain former co-workers who had access to the SunPower non-public, valuable data and know-how that PVT needed most and which was most critical to PVT at that time.  SunPower further alleged that these former SunPower employees engaged in a massive and coordinated effort to steal SunPower's trade secrets during their final hours of employment for use at PVT Solar.

52.     Although Desai was not personally named in the PVT Solar Litigation, his alleged acts of encouraging former SunPower employees to leave SunPower and bring SunPower's trade secrets with them to PVT Solar were the impetus for the PVT Solar Litigation.

53.     SunPower is informed and believes, and thereon alleges, that in or around the first quarter of 2011, PVT Solar changed its name to EchoFirst, Inc.

54.     On or about June 30, 2011, SunPower, EchoFirst, and the individual defendants in the PVT Solar Litigation entered into a Confidential Settlement and Release Agreement ("EchoFirst Agreement"), which resolved the parties' dispute in connection with the PVT Solar Litigation.  A copy of the EchoFirst Agreement is attached hereto as Exhibit H.

55.     As part of the EchoFirst Agreement, EchoFirst agreed to "[n]ot elicit from current or former SunPower employees, during the EchoFirst job interview process or otherwise, any confidential, proprietary, and/or trade secret information of SunPower."

56.     The EchoFirst Agreement states that it shall be binding upon [SunPower and EchoFirst's] successors and assigns.

57.     In or around July 2013, SunEdison purchased EchoFirst.

58.     SunPower is informed and believes, and thereon alleges, that as a result of SunEdison's purchase of EchoFirst, Desai became the Vice President and Global General Manager for SunEdison's Residential & Small Commercial business.

59.     SunPower is informed and believes, and thereon alleges, that Desai has again encouraged SunPower employees, including Fong, to leave SunPower with SunPower's confidential, proprietary, and trade secret information and bring them to his new company, SunEdison, where the information is being used to further SunEdison's business.

60.     In the 12 months following Desai's employment at SunEdison, multiple former SunEdison employees including Fong, Oscar Cepas, and Mark Babcock were hired by SunEdison.   Each of these SunPower employees had access to SunPower's Proprietary Information.

61.     SunPower is informed and believes, and thereon alleges, that during his employment at SunEdison, Desai has used and continues to use SunPower's confidential, proprietary, and trade secret information for his own benefit, to the benefit of SunEdison and to the detriment of SunPower, including SunPower's confidential, proprietary, and trade secret information stolen by Fong and/or Messer.

**E.      SunEdison**

62.     SunPower is informed and believes, and thereon alleges, that SunEdison knowingly accepted stolen computer files from Messer and Fong containing SunPower's Proprietary Information.

63.     SunPower is informed and believes, and thereon alleges, that SunEdison knowingly accepted from former SunPower employees the disclosure of SunPower's Proprietary Information that each were privy to and obtained as a result of their employment at SunPower.

64.     The EchoFirst Agreement states that "[t]his Agreement shall be binding upon the Parties' successors and assigns." EchoFirst's agreement is binding upon SunEdison as EchoFirst's successor-in-interest to the EchoFirst Agreement.

65.     SunPower is informed and believes, and thereon alleges, that SunEdison has breached the EchoFirst Agreement by eliciting SunPower's confidential, proprietary, and/or trade secret information from former SunPower employees after SunEdison's acquisition of EchoFirst.

66.     As part of the EchoFirst Agreement, EchoFirst agreed that SunPower had proprietary rights to its confidential and non-confidential information, including SunPower's trade secret information.

67.     SunPower is informed and believes, and thereon alleges, that SunEdison, Desai, Messer, and Fong have used and continue to use SunPower's Proprietary Information for their own benefit and to the detriment of SunPower.

68.     SunPower is informed and believes, and thereon alleges that SunEdison, Desai, Messer, and Fong have misappropriated and continue to misappropriate at least some of SunPower's Proprietary Information obtained under obligations of secrecy and confidentiality for the purpose of unfairly competing with SunPower.

69.     SunPower is informed and believes, and thereon alleges, that Desai, Messer, Fong, and SunEdison have used and disclosed and continue to use and disclose at least some of SunPower's Proprietary Information in willful and conscious disregard of a duty of confidence owed to SunPower.

70.     SunPower is informed and believes, and thereon alleges, that Desai, Messer, Fong, and SunEdison have committed and continue to commit unlawful business practices including, but not limited to, using at least some of SunPower's Proprietary Information for their own purposes, and adversely to the interests of SunPower and its business venture.

## **FIRST CAUSE OF ACTION**

### (COMPUTER FRAUD AND ABUSE ACT)

### (MESSER AND FONG)

71.     SunPower hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 70.

72.     Messer has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by intentionally accessing a computer used for interstate commerce or communication, without authorization and by exceeding authorized access to such a computer and by obtaining information from such a protected computer, and so causing significant damage.

/ / /

73.     Messer has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by knowingly, and with intent to defraud SunPower, accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and, by means of such conduct, furthered their intended fraud and obtained one or more things of value, including, but not limited to, computer programs, computer software, pricing lists, business plans, financial projections and reports, business strategies, internal operating procedures, other confidential business information, information concerning current or any future and proposed work, services or products, processes, process parameters, methods or practice of operations or sales or lease, schematics and related documentation, distribution lists, financial information, customer needs, dealer needs, market analysis, financial sales and marketing data, business plans and strategies, pricing information, information related to SunPower's dealer networks, including dealer lists, dealer satisfaction scores, dealer volumes, dealer rebates, dealer discounts, dealer pricing, dealer lending terms, dealer sales momentum, dealer cost structure, SunPower's profit realization from dealers in the dealer network and other competitive information about SunPower's dealer network, SunPower's lender networks, including lender lists, lending terms, and other competitive information about SunPower's lender network and other proprietary information.

74.     Messer has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by intentionally accessing a protected computer beyond the scope of the authorization granted, causing damage to SunPower, recklessly or without due regard for his actions.

75.     Fong has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by intentionally accessing a computer used for interstate commerce or communication, without authorization and by exceeding authorized access to such a computer and by obtaining information from such a protected computer, and so causing significant damage.

76.     Fong has violated the Computer Fraud and Abuse Act, 18 U.S.C. §1030, by knowingly, and with intent to defraud SunPower, accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and, by means of such conduct, furthered his intended fraud and obtained one or more things of value, including, but

not limited to, computer programs, computer software, pricing lists, business plans, financial projections and reports, business strategies, internal operating procedures, other confidential business information, information concerning current or any future and proposed work, services or products, processes, process parameters, methods or practice of operations or sales or lease, schematics and related documentation, distribution lists, financial information, customer needs, dealer needs, market analysis, financial sales and marketing data, business plans and strategies, pricing information, information related to SunPower's dealer networks, including dealer lists, dealer satisfaction scores, dealer volumes, dealer rebates, dealer discounts, dealer pricing, dealer lending terms, dealer sales momentum, dealer cost structure, SunPower's profit realization from dealers in the dealer network and other competitive information about SunPower's dealer network, SunPower's lender networks, including lender lists, lending terms, and other competitive information about SunPower's lender network, information relating to the unique system that SunPower employs to handle the in-house servicing of SunPower's financial portfolio, and other proprietary information.

77.     Fong has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by intentionally accessing a protected computer beyond the scope of the authorization granted, causing damage to SunPower, recklessly or without due regard for his actions.

78.     The computer system or systems that Messer and Fong accessed as described above constitute a "protected computer" within the meaning of 18 U.S.C. § 1030.

79.     SunPower has been harmed by these violations, and its harm includes, without limitation, harm to SunPower's data, programs, and computer systems and impairment of the integrity and availability of data, programs, systems, or information.  SunPower has further suffered damage and loss through the cost of responding to the offenses, including conducting damage assessments and restoring data, programs, systems, and or information to its condition prior to the offenses.  These, as well as other losses and damages in an amount to be determined at trial, amount to over $5,000 aggregated over a one-year period.

80.     Messer's and Fong's unlawful access to, and misappropriations from, SunPower's computers also have caused SunPower irreparable injury.  Unless restrained and

enjoined, Messer and Fong will continue to commit such acts.  Damages are not adequate to compensate SunPower for these actual and threatened injuries; SunPower is therefore entitled to injunctive relief as provided by 18 U.S.C. § 1030 (g).

**SECOND CAUSE OF ACTION**

(TRADE SECRET MISAPPROPRIATION)

(MESSER, FONG, DESAI AND SUNEDISON)

81.     SunPower hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 80.

82.     This is a cause of action for Misappropriation of Trade Secrets under the Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*, based upon Messer, Fong, Desai, and SunEdison's wrongful and improper disclosure and use of SunPower's Proprietary Information that constitute trade secrets ("SunPower's Trade Secrets"), which includes, but is not limited to, pricing lists, business plans, financial projections and reports, business strategies, internal operating procedures, information concerning current or any future and proposed work, services or products, processes, process parameters, methods or practice of operations or sales or lease, schematics and related documentation, distribution lists, financial information, customer needs, dealer needs, market analysis, financial sales and marketing data, business plans and strategies, pricing information, information related to SunPower's dealer networks, including dealer lists, dealer satisfaction scores, dealer volumes, dealer rebates, dealer discounts, dealer pricing, dealer lending terms, dealer sales momentum, dealer cost structure, SunPower's profit realization from dealers in the dealer network and other competitive information about SunPower's dealer network, SunPower's lender networks, including lender lists, lending terms, and other competitive information about SunPower's lender network, information relating to the unique system that SunPower employs to handle the in-house servicing of SunPower's financial portfolio, and other trade secret information.

83.     SunPower's Trade Secrets are trade secret because they derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

84.     Messer gained access to some of SunPower's Proprietary Information in the course of an employee-employer relationship with SunPower.  Messer was under an obligation to maintain the secrecy of all of SunPower's Proprietary Information obtained during his employment, including SunPower's Trade Secrets.

85.     Fong gained access to some of SunPower's Proprietary Information in the course of an employee-employer relationship with SunPower.   Fong was under an obligation to maintain the secrecy of all of SunPower's Proprietary Information obtained during his employment, including SunPower's Trade Secrets.

86.     SunPower is informed and believes, and thereon alleges, that Desai gained access to SunPower's Proprietary Information, including SunPower's Trade Secrets, by encouraging Fong to leave SunPower with SunPower's Proprietary Information and disclose it to Desai and SunEdison.

87.     SunPower is informed and believes, and thereon alleges, that SunEdison gained access to SunPower's Proprietary Information , including SunPower's Trade Secrets, by eliciting and/or accepting it from Messer and Fong.

88.     SunPower is informed and believes, and thereon alleges, that Desai gained access to SunPower's Proprietary Information , including SunPower's Trade Secrets, by eliciting and/or accepting it from Fong.

89.     SunPower took reasonable precautions under the circumstances to protect its trade secrets, and all parties with access to the information were subject to obligations to maintain their secrecy.

90.     SunPower is informed and believes, and thereon alleges, that Messer, Fong, Desai, and SunEdison have and continue to use and disclose to third parties SunPower's Trade Secrets without SunPower's consent or permission for their own benefit.

91.     SunPower is informed and believes, and thereon alleges, that Messer, Fong, Desai, and SunEdison have disclosed SunPower's Trade Secrets to third parties, maliciously and in willful and conscious disregard of the rights of SunPower.

/ / /

-19-                                                        COMPLAINT

92.     As a direct and proximate result of Messer, Fong, Desai, and SunEdison's willful, improper, and unlawful use and disclosure of SunPower's Trade Secrets, SunPower has suffered, and will continue to suffer, great harm and damage.  SunPower will continue to be irreparably damaged unless Messer, Fong, Desai, and SunEdison are enjoined from further use and disclosure of SunPower's Trade Secrets.

93.     The aforementioned acts of Messer, Fong, Desai, and SunEdison in wrongfully misappropriating SunPower's Trade Secrets, were and continue to be willful and malicious, warranting an award of exemplary damages, as provided by Civ. Code § 3426.3(c), and an award of reasonable attorneys' fees, as provided by Civ. Code § 3426.4.

### THIRD CAUSE OF ACTION

### (BREACH OF CONTRACT)

### (MESSER, FONG, DESAI AND SUNEDISON)

94.     SunPower hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 93.

95.     As a result of the Messer Agreement, Messer had an obligation to use SunPower's confidential proprietary for SunPower's benefit, return the information to SunPower upon termination of employment, and refrain from engaging in any business or activity that is competitive with SunPower while employed by SunPower.

96.     The foregoing covenants in the Messer Agreement were intended and necessary to protect SunPower's legitimate business interests in its goodwill and confidential proprietary information.

97.     The Messer Agreement is a valid and enforceable contract between SunPower and Messer.

98.     Messer breached the Messer Agreement by using SunPower's Proprietary Information for his own benefit and refusing to return SunPower's Proprietary Information to SunPower upon termination.

99.     SunPower is informed and believes, and thereon alleges, that Messer has shared SunPower's Proprietary Information with at least one third party in violation of his

nondisclosure obligations and continues to wrongfully use SunPower's Proprietary Information in violation of the Messer Agreement.

100.    SunPower is informed and believes, and thereon alleges, that Messer has copied SunPower's electronic data onto other computers or devices in violation of the Messer Agreement.

101.    SunPower is informed and believes, and thereon alleges, that Messer continues to wrongfully retain SunPower's electronic data and other documents and company property in violation of the Messer Agreement.

102.    SunPower is informed and believes, and thereon alleges, that Messer has wrongfully utilized or disclosed SunPower's Proprietary Information in the course of his employment with SunEdison in violation of the Messer Agreement.

103.    SunPower has fully performed all of the obligations and satisfied all conditions for performance under the Messer Agreement.

104.    Messer has willfully and with conscious disregard for the contractual obligations owed to SunPower, breached the Messer Agreement.

105.    SunPower will continue to suffer such injury, loss, and damage unless and until Messer is required to return SunPower's Proprietary Information and electronic data and enjoined from further use and disclosure of SunPower's Proprietary Information and electronic data.

106.    As a result of the Fong Agreement, Fong had an obligation to use SunPower's confidential proprietary information only for SunPower's benefit, return the information to SunPower upon termination of employment, and refrain from engaging in any business or activity that is competitive with SunPower while employed by SunPower.

107.    The foregoing covenants in the Fong Agreement were intended and necessary to protect SunPower's legitimate business interests in its goodwill and confidential proprietary information.

108.    The Fong Agreement is a valid and enforceable contract between SunPower and Fong.

109.    Fong breached the Fong Agreement by using SunPower's Proprietary Information for his own benefit and refusing to return SunPower's confidential proprietary information to SunPower upon termination.

110.    SunPower is informed and believes, and thereon alleges, that Fong has shared SunPower's Proprietary Information with at least one third party in violation of his nondisclosure obligations and continues to wrongfully use SunPower's Proprietary Information in violation of the Fong Agreement.

111.    SunPower is informed and believes, and thereon alleges, that Fong has copied SunPower's electronic data onto other computers or devices in violation of the Fong Agreement.

112.    SunPower is informed and believes, and thereon alleges, that Fong continues to wrongfully retain SunPower's electronic data and other documents and company property in violation of the Fong Agreement.

113.    SunPower is informed and believes, and thereon alleges, that Fong has wrongfully utilized or disclosed SunPower's Proprietary Information in the course of his employment with SunEdison in violation of the Fong Agreement.

114.    SunPower has fully performed all of the obligations and satisfied all conditions for performance under the Fong Agreement.

115.    Fong has willfully and with conscious disregard for the contractual obligations owed to SunPower, breached the Fong Agreement.

116.    SunPower will continue to suffer such injury, loss, and damage unless and until Fong is required to return SunPower's Proprietary Information and electronic data and enjoined from further use and disclosure of SunPower's Proprietary Information and electronic data.

117.    As a result of the Desai Agreement, Desai has an obligation to use SunPower's confidential proprietary information only for SunPower's benefit.

/ / /

/ / /

118.   The foregoing covenants in the Desai Agreement were intended and necessary to protect SunPower's legitimate business interests in its goodwill and confidential proprietary information.

119.   The Desai Agreement is a valid and enforceable contract between SunPower and Desai.

120.   Desai breached the Desai Agreement by using SunPower's Proprietary Information for his own benefit.

121.   SunPower is informed and believes, and thereon alleges, that Desai has obtained some of SunPower's Proprietary Information from former SunPower employees, including Fong, and used such information in the course of his employment at SunEdison in violation of the Desai Agreement.

122.   SunPower is informed and believes, and thereon alleges, that Desai continues to wrongfully use SunPower's Proprietary Information in violation of the Desai Agreement.

123.   SunPower has fully performed all of the obligations and satisfied all conditions for performance under the Desai Agreement.

124.   Desai has willfully and with conscious disregard for the contractual obligations owed to SunPower, breached the Desai Agreement.

125.   SunPower will continue to suffer such injury, loss, and damage unless and Desai is required to return SunPower's Proprietary Information and enjoined from further use and disclosure of SunPower's Proprietary Information.

126.   The EchoFirst Agreement is binding upon EchoFirst's successors and assigns, including SunEdison

127.   As a result of the EchoFirst Agreement, SunEdison had an obligation to "[n]ot elicit from current or former SunPower employees, during the EchoFirst job interview process or otherwise, any confidential, proprietary and/or trade secret information of SunPower."

128.   The foregoing covenant in the EchoFirst Agreement was intended and necessary to protect SunPower's legitimate business interests in its goodwill and confidential

proprietary information.

129.     The EchoFirst Agreement is a valid and enforceable contract between SunPower and SunEdison, as EchoFirst's successor-in-interest.

130.     SunPower is informed and believes, and thereon alleges, that after becoming the successor in interest to the EchoFirst Agreement, SunEdison elicited SunPower's Proprietary Information from former SunPower employees in violation of its obligations under the EchoFirst Agreement and continues to wrongfully use SunPower's Proprietary Information.

131.     SunPower has fully performed all of the obligations and satisfied all conditions for performance under the EchoFirst Agreement.

132.     SunEdison has willfully and with conscious disregard for the contractual obligations owed to SunPower, breached the EchoFirst Agreement.

133.     SunPower will continue to suffer such injury, loss, and damage unless and SunEdison is required to return SunPower's Proprietary Information and enjoined from further use and disclosure of SunPower's Proprietary Information.

134.     Unless restrained and enjoined by the Court, Messer, Fong, Desai, and SunEdison will continue to breach the agreements.

135.     As a foreseeable, direct and proximate result of Messer, Fong, Desai and SunEdison's breach of contract, SunPower has suffered irreparable injury to its rights and pecuniary damages.

136.     Messer, Fong, Desai and SunEdison have derived, received, and will continue to derive and receive from the aforementioned breach of contract, gains, profits and advantages, many of which are not presently known to SunPower.

137.     SunPower is therefore entitled to injunctive relief or specific performance, as well as damages as provided by law.

## FOURTH CAUSE OF ACTION

### (BREACH OF CONFIDENCE)

### (MESSER AND FONG)

138.     SunPower hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 137.

139.     This is a cause of action for Breach of Confidence under California common law.

140.     When SunPower disclosed SunPower's non-trade secret Proprietary Information to Messer, it did so in confidence in the course of an employee-employer relationship, and, therefore, Messer owed SunPower a legal duty of confidence to maintain the information in a proprietary manner and not to use the information for Messer's own purposes or in a manner adverse to SunPower.

141.     Messer accepted SunPower's non-trade secret Proprietary Information voluntarily and for the purpose of his employment with SunPower, thereby owing SunPower a duty of confidence with respect to the information.

142.     SunPower is informed and believes, and thereon alleges, that Messer has willfully and in conscious disregard for the duty of confidence owed to SunPower, disclosed SunPower's non-trade secret Proprietary Information to third parties and used the information for his own purposes and in a manner adverse to SunPower.

143.     When SunPower disclosed SunPower's non-trade secret Proprietary Information to Fong, it did so in confidence in the course of an employee-employer relationship, and, therefore, Fong owed SunPower a legal duty of confidence to maintain the information in a proprietary manner and not to use the information for Fong's own purposes or in a manner adverse to SunPower.

144.     Fong accepted SunPower's non-trade secret Proprietary Information voluntarily and for the purpose of his employment with SunPower, thereby owing SunPower a duty of confidence with respect to the information.

/ / /

COMPLAINT

145.    SunPower is informed and believes, and thereon alleges, that Fong has willfully and in conscious disregard for the duty of confidence owed to SunPower, disclosed SunPower's non-trade secret Proprietary Information to third parties and used the information for his own purposes and in a manner adverse to SunPower.

146.    As a direct and proximate result of Messer's and Fong's willful, improper, and unlawful use of SunPower's non-trade secret Proprietary Information, SunPower has suffered, and will continue to suffer, great harm and damage.  SunPower will continue to be irreparably damaged unless Messer and Fong are enjoined from further use of SunPower's non-trade secret Proprietary Information.

147.    The aforementioned acts of Messer and Fong, in breaching their duty of confidence owed to SunPower, were and continue to be willful, oppressive, fraudulent, and malicious, warranting an award of punitive damages in addition to the actual damages suffered by SunPower.

**FIFTH CAUSE OF ACTION**

(CONVERSION)

(MESSER, FONG, DESAI AND SUNEDISON)

148.    SunPower hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 147.

149.    SunPower has a right to possess SunPower's non-trade secret Proprietary Information by virtue of at least the Messer Agreement, the Fong Agreement, the Desai Agreement and the EchoFirst Agreement.

150.    Messer has willfully interfered with SunPower's ownership and possessory rights to SunPower's non-trade secret Proprietary Information without lawful justification, with every intention of exercising those rights as though they were his by copying and taking SunPower's non-trade secret Proprietary Information.  Messer's intent to exercise dominion or control over SunPower's non-trade secret Proprietary Information is incompatible with, and invasive of, SunPower's rights and has deprived SunPower of its ability to exclusively use and possess SunPower's non-trade secret Proprietary Information.

COMPLAINT

151. Fong has willfully interfered with SunPower's ownership and possessory rights to SunPower's non-trade secret Proprietary Information without lawful justification, with every intention of exercising those rights as though they were his by copying and taking SunPower's non-trade secret Proprietary Information. Fong's intent to exercise dominion or control over SunPower's non-trade secret Proprietary Information is incompatible with, and invasive of, SunPower's rights and has deprived SunPower of its ability to exclusively use and possess SunPower's non-trade secret Proprietary Information.

152. SunEdison has willfully interfered with SunPower's ownership and possessory rights to SunPower's non-trade secret Proprietary Information without lawful justification, with every intention of exercising those rights as though they belonged to SunEdison by accepting SunPower's non-trade secret Proprietary Information. SunEdison's intent to exercise dominion or control over SunPower's non-trade secret Proprietary Information is incompatible with, and invasive of, SunPower's rights and has deprived SunPower of its ability to exclusively use and possess SunPower's non-trade secret Proprietary Information.

153. Desai has willfully interfered with SunPower's ownership and possessory rights to SunPower's non-trade secret Proprietary Information without lawful justification, with every intention of exercising those rights as though they belonged to Desai by accepting SunPower's non-trade secret Proprietary Information. Desai's intent to exercise dominion or control over SunPower's non-trade secret Proprietary Information is incompatible with, and invasive of, SunPower's rights and has deprived SunPower of its ability to exclusively use and possess SunPower's non-trade secret Proprietary Information.

154. SunPower has been damaged as a result of Messer, Fong, Desai and SunEdison's actions.

155. SunPower is entitled to damages, the nature and extent of which will be proved at trial.

156. The aforementioned acts of Messer, Fong, Desai and SunEdison were and continue to be willful, oppressive, fraudulent, and malicious, warranting an award of punitive damages in addition to the actual damages suffered by SunPower.

**SIXTH CAUSE OF ACTION**

(TRESPASS TO CHATTELS)

(MESSER, FONG, DESAI AND SUNEDISON)

157.   SunPower hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 156.

158.   SunPower has ownership and a right to possess SunPower's non-trade secret Proprietary Information as described herein.

159.   Messer has willfully interfered with SunPower's ownership and/or possessory rights to that information, without lawful justification, with every intention of exercising those rights as though it were his by copying and taking SunPower's non-trade secret Proprietary Information.

160.   Fong has willfully interfered with SunPower's ownership and/or possessory rights to that information, without lawful justification, with every intention of exercising those rights as though it were his by copying and taking SunPower's non-trade secret Proprietary Information.

161.   SunEdison has willfully interfered with SunPower's ownership and/or possessory rights to that information, without lawful justification, with every intention of exercising those rights as though they were theirs by accepting and using SunPower's non-trade secret Proprietary Information.

162.   Desai has willfully interfered with SunPower's ownership and/or possessory rights to that information, without lawful justification, with every intention of exercising those rights as though they were his by accepting and using SunPower's non-trade secret Proprietary Information.

163.   Messer, Fong and SunEdison's intent to exercise dominion or control over SunPower's non-trade secret Proprietary Information is incompatible with, and invasive of, SunPower's rights and has deprived SunPower of its ability to exclusively use and possess SunPower's non-trade secret Proprietary Information.

/ / /

164.   Messer, Fong and SunEdison's actions caused injury to SunPower and to its right to its property.

165.   SunPower is entitled to damages, the nature and extent of which will be proved at trial.

166.   The aforementioned acts of Messer, Fong and SunEdison were and continue to be willful, oppressive, fraudulent, and malicious, warranting an award of punitive damages in addition to the actual damages suffered by SunPower.

## SEVENTH CAUSE OF ACTION

### (INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE)

### (MESSER, FONG, DESAI, AND SUNEDISON)

167.   SunPower hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 166.

168.   SunPower enjoys an economic relationship with many lenders and dealers with which it has contracted in the past, and with which it expects to contract in the future.

169.   As a result of their respective positions at SunPower, Messer and Fong knew of these relationships and the economic benefit they bring to SunPower.

170.   Messer obtained SunPower's non-trade secret Proprietary Information during his employment at SunPower.  SunPower is informed and believes, and thereon alleges, that thereafter, Messer began using SunPower's non-trade secret Proprietary Information during his employment with SunEdison to disrupt SunPower's economic relationship with at least some of its lenders and dealers.

171.   SunPower is informed and believes, and thereon alleges, that Fong obtained SunPower's non-trade secret Proprietary Information during his employment at SunPower. SunPower is informed and believes, and thereon alleges, that thereafter, Fong began using SunPower's non-trade secret Proprietary Information during his employment with SunEdison to disrupt SunPower's economic relationship with at least some of its lenders and dealers.

172.   SunPower is informed and believes, and thereon alleges, that SunEdison learned of SunPower's relationship with SunPower's lenders and dealers with which it has

contracted in the past, and with which it expects to contract in the through former SunPower employees, including at least Messer and Fong.

173.   SunPower is informed and believes, and thereon alleges, that SunEdison accepted SunPower's non-trade secret Proprietary Information from former SunPower employees, including at least Messer and Fong, and used such information to disrupt SunPower's economic relationship with at least some of its lenders and dealers.

174.   SunPower is informed and believes, and thereon alleges, that Desai learned of SunPower's relationship with SunPower's lenders and dealers with which it has contracted in the past, and with which it expects to contract in the through former SunPower employees, including at least Fong.

175.   SunPower is informed and believes, and thereon alleges, that Desai accepted SunPower's non-trade secret Proprietary Information from former SunPower employees, including at least Fong, and used such information to disrupt SunPower's economic relationship with at least some of its lenders and dealers.

176.   Messer, Fong, Desai, and SunEdison have and continue to intentionally disrupt SunPower's relationship with at least SunPower's lenders and dealers.

177.   Messer, Fong, Desai, and SunEdison's acts of intentional and wrongful disruption include the past and continuing wrongful use of SunPower's non-trade secret Proprietary Information.

178.   Messer, Fong, Desai, and SunEdison's intentional acts have actually and proximately caused a disruption of the economic relationship SunPower enjoys with its lenders and dealers.

179.   The aforementioned acts of Messer, Fong, Desai and SunEdison were and continue to be willful, oppressive, fraudulent, and malicious, warranting an award of punitive damages in addition to the actual damages suffered by SunPower.

180.   Messer, Fong, Desai, and SunEdison's acts have resulted in a loss of beneficial economic relationships and actual profits to Plaintiffs.  Money damages would provide an

/ / /

1   insufficient remedy.  Plaintiffs have no plain, speedy and adequate remedy at law and are

2   entitled to injunctive relief.

3                              **EIGHTH CAUSE OF ACTION**

4   (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

5                                  (MESSER AND FONG)

6       181.    SunPower hereby realleges and incorporates by reference the allegations set

7   forth in paragraphs 1 through 180.

8       182.    Messer, through the actions set forth above, including the data theft, wrongful

9   retention of data, secretly conspiring to assist a competing business while still employed by

10  SunPower, has breached the implied covenant of good faith and fair dealing that is implied

11  into his agreements with SunPower, as a result of which SunPower has been and will

12  continue to be significantly harmed.

13      183.    Fong, through the actions set forth above, including the data theft, wrongful

14  retention of data, secretly conspiring to assist a competing business while still employed by

15  SunPower, has breached the implied covenant of good faith and fair dealing that is implied

16  into his agreements with SunPower, as a result of which SunPower has been and will

17  continue to be significantly harmed.

18      184.    Messer and Fong are liable to SunPower for all damages SunPower sustained

19  as a result of their breach of the implied covenant of good faith and fair dealing.

20      185.    The aforementioned acts of Messer and Fong were and continue to be willful,

21  oppressive, fraudulent, and malicious, warranting an award of punitive damages in addition to

22  the actual damages suffered by SunPower.

23                              **NINTH CAUSE OF ACTION**

24          (INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS)

25                              (DESAI AND SUNEDISON)

26      186.    SunPower hereby realleges and incorporates by reference the allegations set

27  forth in paragraphs 1 through 185.

28      187.    Messer and Fong and SunPower entered into valid contracts, whereby Messer

and Fong agreed to use SunPower's non-trade secret Proprietary Information for SunPower's benefit, to not disclose such information and to return the information to SunPower upon termination of employment.

188.    SunPower is informed and believes, and thereon alleges, that SunEdison was aware of the contractual relationships between SunPower and Messer and Fong.

189.    SunPower is informed and believes, and thereon alleges, that Desai was aware of the contractual relationships between SunPower and Fong.

190.    SunPower is informed and believes, and thereon alleges, that SunEdison intended for Messer and Fong to breach their respective contracts with SunPower.

191.    SunPower is informed and believes, and thereon alleges, that SunEdison elicited SunPower's non-trade secret Proprietary Information from Messer and Fong and encouraged Messer and Fong to obtain SunPower's non-trade secret Proprietary Information for disclosure to SunEdison, in breach of Messer and Fong's respective contracts with SunPower.

192.    SunPower is informed and believes, and thereon alleges, that Desai intended for Fong to breach his contract with SunPower.

193.    SunPower is informed and believes, and thereon alleges, that Desai elicited SunPower's non-trade secret Proprietary Information from Fong and encouraged Fong to obtain SunPower's non-trade secret Proprietary Information for disclosure to Desai, in breach of Fong's contract with SunPower.

194.    Messer and Fong's taking and disclosing of SunPower's non-trade secret Proprietary Information was a breach of their respective contracts with SunPower.

195.    As a foreseeable, direct and proximate result of Messer and Fong's breach of contract, SunPower has suffered irreparable injury to its rights and pecuniary damages. SunPower will continue to suffer such injury, loss, and damage unless and until SunEdison and Desai are enjoined from further interference with SunPower's contractual relations with its former employees.

**COMPLAINT**

**TENTH CAUSE OF ACTION**

(INDUCED BREACH OF CONTRACT)

(DESAI AND SUNEDISON)

196.     SunPower hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 195.

197.     SunPower is informed and believes, and thereon alleges, that SunEdison induced Messer and Fong to breach their respective contracts with SunPower.

198.     SunPower is informed and believes, and thereon alleges, that Desai induced Fong to breach his contract with SunPower.

199.     As a foreseeable, direct and proximate result of Messer and Fong's breach of contract, SunPower has suffered irreparable injury to its rights and pecuniary damages. SunPower will continue to suffer such injury, loss, and damage unless and until SunEdison and Desai are enjoined from inducing further breach of SunPower's contracts with its former employees.

200.     SunPower is informed and believes, and thereon alleges, that by inducing Messer and Fong to breach their respective contracts with SunPower and disclose SunPower's non-trade secret Proprietary Information to a direct competitor, SunEdison and Desai's action have substantially harmed SunPower.

**ELEVENTH CAUSE OF ACTION**

(CONSPIRACY TO BREACH OF CONTRACT)

(MESSER, FONG, DESAI, AND SUNEDISON)

201.     SunPower hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 200.

202.     SunPower is informed and believes, and thereon alleges, that Desai and SunEdison intended for Messer and Fong to obtain and disclose to SunEdison, SunPower's Proprietary Information for SunEdison's benefit.

203.     SunPower is informed and believes, and thereon alleges, that Messer and Fong intentionally breached their contracts with SunPower and that such breach was known,

-33-                                             **COMPLAINT**

encouraged, and enabled by SunEdison's actions.

204.    SunPower is informed and believes, and thereon alleges, that Fong intentionally breached his contract with SunPower and that such breach was known, encouraged, and enabled by Desai's actions.

205.    As a foreseeable, direct and proximate result of Messer and Fong's breach of contract, SunPower has suffered irreparable injury to its rights and pecuniary damages. SunPower will continue to suffer such injury, loss, and damage unless and until Messer and Fong are enjoined from breaching the Messer and Fong Agreements and until SunEdison and Desai are enjoined from encouraging and enabling further breach of SunPower's contracts with SunPower's former employees.

206.    SunPower is informed and believes, and thereon alleges, that by encouraging and enabling Messer and Fong to breach their contracts with SunPower and disclose SunPower's confidential and proprietary information to direct competitor, the actions of SunEdison and Desai substantially caused SunPower's harm.

207.    SunPower is informed and believes, and thereon alleges, that SunEdison and Desai were aware that Fong intended to breach the breach the Fong Agreement by providing SunPower's Proprietary Information to SunEdison and encouraged him to do so.

208.    SunPower is informed and believes, and thereon alleges, that SunEdison was aware that Messer planned to breach the breach the Messer Agreement by providing SunPower's Proprietary Information to SunEdison and encouraged him to do so.

209.    SunPower is informed and believes, and thereon alleges, that SunEdison and Messer were in agreement that Messer breach the Messer Agreement by providing SunPower's Proprietary Information to SunEdison and that SunEdison and Messer intended that such breach occur in order to benefit SunEdison.

210.    SunPower is informed and believes, and thereon alleges, that SunEdison, Fong, and Desai were in agreement that Fong breach the Fong Agreement by providing SunPower's Proprietary Information to SunEdison and that SunEdison, Fong, and Desai intended that such breach occur in order to benefit SunEdison.

**TWELFTH CAUSE OF ACTION**

(BREACH OF DUTY OF LOYALTY)

(MESSER AND FONG)

211.    SunPower hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 210.

212.    Fong was an employee of SunPower until August 29, 2013.  This employment relationship gave rise to a duty of loyalty.

213.    Fong breached the duty of loyalty that he owed to his employer SunPower, by competing with SunPower and taking SunPower's non-trade secret Proprietary Information for his own and SunEdison's benefit during his employment with SunPower.

214.    Messer was an employee of SunPower until July 29, 2011.  This employment relationship gave rise to a duty of loyalty.

215.    Messer breached the duty of loyalty that he owed to his employer SunPower, by competing with SunPower and taking SunPower's non-trade secret Proprietary Information for his own and SunEdison's benefit during his employment with SunPower.

216.    As a foreseeable, direct and proximate result of Messer and Fong's breach of loyalty, SunPower has suffered irreparable injury to its rights and pecuniary damages. SunPower will continue to suffer such injury, loss, and damage unless and until Messer and Fong are enjoined from disclosing SunPower's non-trade secret Proprietary Information.

**THIRTEENTH CAUSE OF ACTION**

(UNFAIR COMPETITION)

(MESSER, FONG, DESAI, AND SUNEDISON)

217.    SunPower hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 216.

218.    This is a cause of action for Unfair Competition under the California common law.

219.    Messer's acts of Breach of Contract, Breach of Confidence, Conversion, Trespass to Chattels, Interference with Prospective Economic Advantage, Breach of the

Implied Covenant of Good Faith and Fair Dealing, Conspiracy to Breach of Contract, and Breach of Duty of Loyalty alleged herein constitute unlawful, unfair, and fraudulent business practices in violation of the California common law of Unfair Competition.

220.    Fong's acts of Breach of Contract, Breach of Confidence, Conversion, Trespass to Chattels, Interference with Prospective Economic Advantage, Breach of the Implied Covenant of Good Faith and Fair Dealing, Conspiracy to Breach of Contract, and Breach of Duty of Loyalty alleged herein constitute unlawful, unfair, and fraudulent business practices in violation of the California common law of Unfair Competition.

221.    Desai's acts of Breach of Contract, Conversion, Trespass to Chattels, Interference with Prospective Economic Advantage, Interference with Contractual Relationships, Induced Breach of Contract, and Conspiracy to Breach of Contract alleged herein constitute unlawful, unfair, and fraudulent business practices in violation of the California common law of Unfair Competition.

222.    SunEdison's acts of Breach of Contract, Conversion, Trespass to Chattels, Interference with Prospective Economic Advantage, Interference with Contractual Relationships, Induced Breach of Contract, and Conspiracy to Breach of Contract alleged herein constitute unlawful, unfair, and fraudulent business practices in violation of the California common law of Unfair Competition.

223.    The aforementioned acts of Messer, Fong, Desai and SunEdison were and continue to be willful, oppressive, fraudulent, and malicious, warranting an award of punitive damages in addition to the actual damages suffered by SunPower.

224.    As a direct and proximate result of Messer, Fong, Desai, and SunEdison's willful, improper, and unlawful conduct, SunPower has suffered, and will continue to suffer, great harm and damage.  SunPower will continue to be irreparably damaged unless Messer, Fong, Desai, and SunEdison are enjoined from further committing unfair and unlawful business practices against SunPower and SunPower's business.

**FOURTEENTH CAUSE OF ACTION**

(STATUTORY UNFAIR COMPETITION)

(MESSER, FONG, DESAI, AND SUNEDISON)

225.    SunPower hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 224.

226.    This is a cause of action for Statutory Unfair Competition under California Bus. & Prof. Code § 17200, et seq.

227.    Messer's acts of Breach of Contract, Breach of Confidence, Conversion, Trespass to Chattels, Interference with Prospective Economic Advantage, Breach of the Implied Covenant of Good Faith and Fair Dealing, Conspiracy to Breach of Contract, and Breach of Duty of Loyalty alleged herein constitute unlawful, unfair, and fraudulent business practices in violation of California Bus. & Prof. Code § 17200, et seq.

228.    Fong's acts of Breach of Contract, Breach of Confidence, Conversion, Trespass to Chattels, Interference with Prospective Economic Advantage, Breach of the Implied Covenant of Good Faith and Fair Dealing, Conspiracy to Breach of Contract, and Breach of Duty of Loyalty alleged herein constitute unlawful, unfair, and fraudulent business practices in violation of California Bus. & Prof. Code § 17200, et seq.

229.    Desai's acts of Breach of Contract, Conversion, Trespass to Chattels, Interference with Prospective Economic Advantage, Interference with Contractual Relationships, Induced Breach of Contract, and Conspiracy to Breach of Contract alleged herein constitute unlawful, unfair, and fraudulent business practices in violation of California Bus. & Prof. Code § 17200, et seq.

230.    SunEdison's acts of Breach of Contract, Conversion, Trespass to Chattels, Interference with Prospective Economic Advantage, Interference with Contractual Relationships, Induced Breach of Contract, and Conspiracy to Breach of Contract alleged herein constitute unlawful, unfair, and fraudulent business practices in violation of California Bus. & Prof. Code § 17200, et seq.

/ / /

231.   As a direct and proximate result of Messer, Fong, Desai, and SunEdison's willful, improper, and unlawful conduct, SunPower has suffered, and will continue to suffer, great harm and damage.  SunPower will continue to be irreparably damaged unless Messer, Fong, Desai, and SunEdison are enjoined from further committing unfair and unlawful business practices against SunPower and SunPower's business.

## PRAYER FOR RELIEF

WHEREFORE, SunPower prays for judgment in its favor against Defendants for the following relief:

A.   That Messer and Fong be adjudged to have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and that Messer and Fong's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

B.   That Messer, Fong, and SunEdison be adjudged to have misappropriated SunPower's trade secrets in violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*, and that Messer, Fong, and SunEdison's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

C.   That Messer be adjudged to have breached the Messer Agreement with SunPower, under the common law of the State of California, and that Messer's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

D.   That Fong be adjudged to have breached the Fong Agreement with SunPower, under the common law of the State of California, and that Fong's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

E.   That Desai be adjudged to have breached the Desai Agreement with SunPower, under the common law of the State of California, and that Desai's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

F.   That SunEdison be adjudged to have breached the EchoFirst Agreement with SunPower, under the common law of the State of California, and that SunEdison's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

G.      That SunEdison be adjudged to have induced Messer's breach of the Messer Agreement with SunPower, under the common law of the State of California, and that such acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

H.      That SunEdison and Desai be adjudged to have induced Fong's breach of the Fong Agreement with SunPower, under the common law of the State of California, and that such acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

I.      That SunEdison and Messer be adjudged to have conspired to induce Messer's breach of the Messer Agreement with SunPower, under the common law of the State of California, and that such acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

J.      That SunEdison, Desai, and Fong be adjudged to have conspired to induce Fong's breach of the Messer Agreement with SunPower, under the common law of the State of California, and that such acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

K.      That Messer and Fong be adjudged to have breached their duty of confidence owed to SunPower under the common law of the State of California, and that Messer and Fong's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

L.      That Messer and Fong be adjudged to have breached their duty of loyalty owed to SunPower under the common law of the State of California, and that Messer and Fong's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

M.      That Messer, Fong, Desai and SunEdison be adjudged to have interfered with SunPower's ownership and possessory rights to SunPower's non-trade secret Proprietary Information, without lawful justification, with every intention of exercising those rights as though they were theirs, under the common law of the State of California, and that Messer, Fong, Desai and SunEdison's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

N.      That Messer, Fong, Desai and SunEdison be adjudged to have interfered with SunPower's ownership and/or possessory rights to SunPower's non-trade secret Proprietary

Information under the common law of the State of California, and that Defendants' acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

O. That Messer, Fong, Desai, and SunEdison be adjudged to have intentionally interfered with SunPower's prospective business advantage, under the common law of the State of California, and that Messer, Fong, Desai and SunEdison's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

P. That Messer and Fong be adjudged to have breached the implied covenant of good faith and fair dealing, under the common law of the State of California, and that Messer and Fong's acts in doing so be adjudged oppressive, fraudulent, willful, malicious, and done knowingly;

Q. That SunEdison and Desai be adjudged to have interfered with SunPower's contractual relations, under the common laws of the State of California, and that Desai and SunEdison's acts in doing so be adjudged willful malicious, oppressive, and done knowingly;

R. That Messer, Fong, Desai and SunEdison be adjudged to have competed unfairly with SunPower, under the common law of the State of California, and that Messer, Fong, Desai and SunEdison's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

S. That Messer, Fong, Desai, and SunEdison be adjudged to have competed unfairly with SunPower under California Business and Professions Code § 17200, and that Messer, Fong, Desai, and SunEdison's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

T. That Defendants be adjudged to have been unjustly enriched;

U. That Messer, Fong, and SunEdison, their respective agents, servants, employees and attorneys, and all those persons in active concert or participation with it, be forthwith temporarily, preliminarily and thereafter permanently enjoined, pursuant to Federal Rule Civil Procedure 65 and Uniform Trade Secrets Act, Cal. Civ. Code § 3426.2 to return all of SunPower's trade secrets; and from further disclosing to any third parties any of SunPower's trade secret information;

V.     That Messer, Fong, and SunEdison, their respective agents, servants, employees and attorneys, and all those persons in active concert or participation with it, be forthwith temporarily, preliminarily and thereafter permanently enjoined, pursuant to Federal Rule Civil Procedure 65, 18 U.S.C. § 1030 (g), California Business and Professions Code § 17200, and the common law of the State of California to return all of SunPower's non-trade secret Proprietary Information; from further disclosing to any third parties any of SunPower's non-trade secret Proprietary Information; and from unfairly competing with SunPower in any manner;

W.     That Messer, Fong, Desai and SunEdison be directed to file with this Court and serve on Plaintiff within thirty (30) days after the service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Messer, Fong, Desai and SunEdison have complied with the injunction;

X.     That Defendants be required to account to SunPower for any and all gains, profits and advantages derived by it, and all damages sustained by SunPower, by reason of Defendants' acts complained herein;

Y.     An order imposing a constructive trust for the benefit of SunPower over: (1) any trade secrets Messer, Fong, and SunEdison obtained from SunPower; (2) any profits, revenues, or other benefits obtained by Messer, Fong, and SunEdison as a result of any disclosure or use of trade secrets obtained from SunPower; (3) any proprietary information obtained from SunPower; and (4) any profits, revenues, or other benefits obtained by Messer, Fong, Desai and SunEdison as a result of any disclosure or use of proprietary information obtained from SunPower; and

/ / /

/ / /

/ / /

/ / /

Z.      Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  June 3, 2015

By: /s/ *Boris Zelkind*
      Michael K. Friedland
      Boris Zelkind
      Amy C. Chun
      Ali S. Razai

Attorneys for Plaintiff
SUNPOWER CORPORATION

COMPLAINT

## DEMAND FOR JURY TRIAL

SunPower hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  June 3, 2015

By: /s/ Boris Zelkind
Michael K. Friedland
Boris Zelkind
Amy C. Chun
Ali S. Razai

Attorneys for Plaintiff
SUNPOWER CORPORATION

20816626

**COMPLAINT**

# EXHIBIT A



PLEASE READ THE FOLLOWING CAREFULLY!

THIS **AGREEMENT CONCERNING PROPRIETARY INFORMATION AND INVENTIONS** ("Agreement")
SETS FORTH ADDITIONAL TERMS AND CONDITIONS OF YOUR EMPLOYMENT.

Whereas, I understand that SunPower Corporation is a Delaware corporation with a principal place of business at 3939 N. First Street, San Jose, California 95134 ("SunPower") and that SunPower is engaged in numerous fields of business and activities, including research and development in various existing and projected fields of SunPower's business, to make discoveries and develop improvements, including patentable inventions; and development and implementation of new products and services; and extension of SunPower's business into new fields; and

Whereas, during my employment with SunPower, I understand that I will have access to confidential or proprietary information concerning one or more of SunPower's businesses or activities, including research and development work, new product, and other service design and development material, market plans, and other confidential or proprietary information originating in SunPower or disclosed to SunPower by others under an agreement to hold such information in confidence; and that I may make discoveries, inventions, and improvements, which may or may not be patentable, or develop or improve products and services, or develop market plans, which relate to or are useful in the business or activities in which SunPower is or may become engaged; and

Whereas, I understand that inventions, as the term is used in this Agreement, include without limit any new or useful art, discovery, contribution, finding, or improvement, whether or not patentable or otherwise protectable, and all related know-how, including, without limitation, all designs, trademarks, discoveries, formulae, processes, manufacturing techniques, trade secrets, inventions, improvements, ideas, or copyrightable or patentable or trademarkable ideas, symbols, works, marks, settings, or characterizations, including all rights to obtain, register, perfect, and enforce these proprietary interests;

**NOW, THEREFORE, IN CONSIDERATION OF THE ABOVE CIRCUMSTANCES AND MY UNDERSTANDING OF THEM AND OF THE REASONS FOR THIS AGREEMENT AND IN CONSIDERATION OF MY EMPLOYMENT AND CONTINUING EMPLOYMENT BY SUNPOWER,**

I, _SHANE MESSER_ , agree
(Name of Employee)

1.    During and after my employment with SunPower, I agree not to utilize any such information as described above for my own or others benefit or to disclose any such information to which I may have access to anyone outside SunPower, unless otherwise authorized in writing by SunPower.

2.    Upon leaving the employment of SunPower, I understand that I may use any skill gained from employment with SunPower which is of a general nature and is not an invention, discovery, or improvement developed within the course and scope of my employment or based on or utilizing SunPower confidential or proprietary information of the kind described herein, or is confidential information of SunPower or any third person to which I may have had access during my employment.

EXHIBIT A

AGREEMENT CONCERNING
PROPRIETARY INFORMATION AND INVENTIONS

3.      During and after my employment with SunPower, I agree to disclose promptly in writing to SunPower all inventions, improvements, and discoveries and other information of the kind described above, made, conceived, or reduced to practice by me, either solely or jointly with others, during my employment with SunPower, whether or not during regular working hours, which relate to any subject matter with which my work with SunPower is or may be concerned, and which relate to the business or activities carried on by SunPower and to any reasonable expansion of such business and activities.

4.      During and after my employment with SunPower, I agree that all inventions, improvements, and discoveries and other information of the kind described above, are and shall remain the property of SunPower, whether or not patent applications are filed thereon. I hereby assign and agree to assign to SunPower any such inventions, improvements, and discoveries which SunPower may deem to be patentable inventions, whether or not such inventions were reduced to practice during the period of my employment, and to execute all patent applications, assignments, and other documents, and to provide all reasonable assistance, as may be necessary or requested, to vest in SunPower the entire right, title and interest in and to such inventions and in and to any patents obtainable therefor in the United States and foreign countries. SunPower shall assume the entire expense of preparing, filing, and prosecuting such applications for patents.

5.      During and after my employment with SunPower, I agree to assign to SunPower any inventions, improvements, or discoveries conceived by me after I leave the employ of SunPower if same are based on or utilize SunPower confidential information of the kind described above, which I obtained or had access to while in the employ of SunPower, and to assist SunPower in preparing, filing and prosecuting patents for such inventions, improvements or discoveries in the manner described in above. In the event that I refuse, neglect or am unable to perform any act, including, but not limited to, executing any documents, relating to the assignment, preparation, filing, and prosecution of patents for such inventions, improvements or discoveries, I hereby appoint SunPower's counsel and/or SunPower's corporate secretary to act as my attorney for the purpose of securing SunPower's rights therein, including providing these appointed persons with full authority to execute any necessary documents on my behalf to effectuate the purposes of this paragraph.

6.      During and after my employment with SunPower, I agree that all writings, drawings, designs, or other creative renditions of works which are prepared or conceived by me, solely or jointly with others, in connection with SunPower business or at SunPower expense or in the course of my employment by SunPower or that contain SunPower proprietary business or technical information, including all copies of same, shall be disclosed to and be and become the property of SunPower. All copyright, trademark and other proprietary rights that may exist or be available on any of such matters shall be and become the sole property of SunPower and I agree, upon request whenever made and at the expense of SunPower but without additional compensation, to execute all papers and documents to otherwise assist and cooperate with SunPower to secure and protect SunPower rights therein.

7.      During my employment with SunPower, I will not use or disclose any confidential or proprietary information or trade secrets of my former employers or companies, or any third party, if any, and that I will not bring onto the SunPower premises any unpublished document or any property belonging to my former employers or companies, or any third party, if any, unless consented to in writing by said employers, companies or third party.

8.      I agree that upon termination of employment, whenever and for whatever reasons, I will surrender to SunPower all SunPower information of the kind thereof, in whatever form or medium, including any copies.

9.      During the term of my employment with SunPower and for a period of two (2) years thereafter, I agree that I will not solicit or encourage, or cause, or enable others to solicit or encourage, any employees of SunPower to terminate their employment with SunPower.

10.     During my employment with SunPower, I agree to refrain from engaging in any business or activity that is either competitive with, or places me in a conflict with the full, faithful, and efficient discharge of my employment duties.

11.     All records, reports, notes, compilations, calendars, notebooks, or other recorded matter, and copies or reproductions thereof, relating to SunPower's operations, activities, or business, made or received by me during the period of my employment with SunPower are and shall remain SunPower's exclusive property, and I agree I will keep the same at all times in SunPower's custody and subject to its control, and will surrender the same at or before the termination of my employment with SunPower.

12.     I agree that this agreement shall be binding upon me, my heirs, and my legal representatives and is binding upon and shall inure to the benefit of SunPower, its successors and assigns.

13.     I agree that this Agreement shall be governed and construed according to the laws of the State of California, without regard to its conflict of interest laws.

EXHIBIT A

AGREEMENT CONCERNING
PROPRIETARY INFORMATION AND INVENTIONS

14.     I agree that in the event of a breach of any of the provisions of this Agreement, SunPower will suffer irreparable and permanent damages and injury for which monetary relief will not be adequate and, in addition to any and all rights, in law or in equity, that may be available to SunPower, SunPower shall be entitled to immediate injunctive relief without the need to post any bond or security in order to obtain same, and shall also be entitled to recover its reasonable attorney's fees in addition to any other damages.

15.     I agree that any failure of SunPower at any time or times to require performance of any provision of this Agreement shall in no manner affect SunPower's available remedies or right at a later time to enforce the same. No waiver by SunPower of any condition, or of the breach of any term, covenant, representation or warranty contained in this Agreement, whether by conduct or otherwise (in any one or more instances) shall be deemed to be or construed as a further or continuing waiver of any such condition or breach or of any remedy or as a waiver of any other condition or as a breach of any other term, covenant, representation or warranty of this Agreement.

16.     No person has made any promise or representation to me related to the subject matter of this Agreement, except for the promises and representations expressly written in this Agreement. I have not relied on any such promise or representation and I understand that SunPower does not allow any person to make any such promise or representation.

17.     I agree that this Agreement, together with its Attachment I, sets forth the entire agreement and understanding of the parties relating to the subject matter hereof and merges all prior or concurrent discussions between the parties and any and all prior or concurrent agreements concerning protection, ownership, and use of inventions, discoveries, improvements and other information of the kind described above between myself and SunPower.

18.     I AM HEREBY NOTIFIED THAT, PURSUANT TO SECTION 2870 OF THE CALIFORNIA LABOR CODE, NO ASSIGNMENT TO SUNPOWER IS REQUIRED FOR ANY INVENTION, DISCOVERIES, IMPROVEMENTS OR INFORMATION OF THE KIND DESCRIBED ABOVE, FOR WHICH NO EQUIPMENT, SUPPLIES, FACILITY, OR CONFIDENTIAL OR PROPRIETARY INFORMATION OF SUNPOWER WAS USED AND WHICH WAS DEVELOPED ENTIRELY ON MY OWN TIME UNLESS (a.) THE INVENTION OR INFORMATION RELATES (i.) DIRECTLY TO THE BUSINESS OF SUNPOWER, OR (ii.) TO SUNPOWER'S ACTUAL OR DEMONSTRABLY ANTICIPATED RESEARCH AND DEVELOPMENT, OR (b.) THE INVENTION INFORMATION RESULTS FROM ANY WORK PERFORMED BY ME FOR SUNPOWER.

19.     I AM FURTHER NOTIFIED THAT I SHALL NOT BE OBLIGATED TO ASSIGN TO SUNPOWER ANY INVENTION, DISCOVERIES, IMPROVEMENTS OR INFORMATION OF THE KIND DESCRIBED ABOVE, WHICH RELATE TO OR WOULD BE USEFUL IN ANY BUSINESS OR ACTIVITY IN WHICH SUNPOWER IS OR MAY BECOME ENGAGED WHICH WERE CONCEIVED, ACQUIRED OR REDUCED TO PRACTICE PRIOR TO MY EMPLOYMENT WITH SUNPOWER PROVIDED THAT ALL SUCH INVENTIONS, PATENTED AND UNPATENTED, AND INFORMATION ARE LISTED AT THE INITIAL TIME OF MY EMPLOYMENT IN ATTACHMENT I TO THIS AGREEMENT.

20.     I have read and understood all of the provisions of this Agreement. I have had the opportunity to seek independent advice and counsel related to this Agreement.

21.     Lastly, I agree that any violation of this Agreement while I am employed by SunPower may be considered as grounds for disciplinary action up to and including termination of my employment and/or any legal action and/or equity proceeding to exercise SunPower's rights and/or to secure SunPower's remedies.

THIS AGREEMENT DOES NOT BIND EITHER PARTY TO ANY SPECIFIC PERIOD OF EMPLOYMENT; I UNDERSTAND THAT MY EMPLOYMENT BY SUNPOWER IS AT WILL.
Dated this 23ʳᵈ day of July , 20 07

*Shane Messer*
Employee Signature

Accepted and Agreed to:

SunPower Corporation

By: _____
Title: _____
Date: _____

_____
Witness

AGREEMENT CONCERNING
PROPRIETARY INFORMATION AND INVENTIONS

**ATTACHMENT I**

_____
(Name of Employee)

PLEASE LIST PRIOR INVENTIONS, BOTH PATENTED AND UNPATENTED AND ANY OTHER INFORMATION OF THE KIND DESCRIBED IN THIS AGREEMENT WHICH YOU WANT TO REMOVE FROM THE OPERATION OF THIS AGREEMENT <u>OR</u> INITIAL THE STATEMENT BELOW IF NONE:

1. _____

2. _____

3. _____

4. _____

5. _____

(Attach more paper if necessary)

_____     I have no such prior inventions, patented or unpatented, or other information which I want excepted from the assignment and use commitments of this Agreement.

**EXHIBIT A**

# EXHIBIT B



PLEASE READ THE FOLLOWING CAREFULLY!

THIS **AGREEMENT CONCERNING PROPRIETARY INFORMATION AND INVENTIONS** ("Agreement")
SETS FORTH ADDITIONAL TERMS AND CONDITIONS OF YOUR EMPLOYMENT.

Whereas, I understand that SunPower Corporation, a Delaware corporation with a principal place of business at 3939 N. First Street, San Jose, California 95134, and any existing or future subsidiaries, directly or indirectly through one or more intermediaries, controlled by SunPower Corporation (collectively, "SunPower") is engaged in numerous fields of business and activities, including research and development in various existing and projected fields of SunPower's business, to make discoveries and develop improvements, including patentable inventions; and development and implementation of new products and services; and extension of SunPower's business into new fields; and

Whereas, during my employment with SunPower, I understand that I will have access to confidential or proprietary information concerning one or more of SunPower's businesses or activities, including research and development work, new product, and other service design and development material, market plans, and other confidential or proprietary information originating in SunPower or disclosed to SunPower by others under an agreement to hold such information in confidence; and that I may make discoveries, inventions, and improvements, which may or may not be patentable, or develop or improve products and services, or develop market plans, which relate to or are useful in the business or activities in which SunPower is or may become engaged; and

Whereas, I understand that inventions, as the term is used in this Agreement, include without limit any new or useful art, discovery, contribution, finding, or improvement, whether or not patentable or otherwise protectable, and all related know-how, including, without limitation, all designs, trademarks, discoveries, formulae, processes, manufacturing techniques, trade secrets, inventions, improvements, ideas, or copyrightable or patentable or trademarkable ideas, symbols, works, marks, settings, or characterizations, including all rights to obtain, register, perfect, and enforce these proprietary interests;

**NOW, THEREFORE, IN CONSIDERATION OF THE ABOVE CIRCUMSTANCES AND MY UNDERSTANDING OF THEM AND OF THE REASONS FOR THIS AGREEMENT AND IN CONSIDERATION OF MY EMPLOYMENT AND CONTINUING EMPLOYMENT BY SUNPOWER,**

I, _KENDALL   FONG_ , agree
(Name of Employee)

1.    During and after my employment with SunPower, I agree not to utilize any such information as described above for my own or others benefit or to disclose any such information to which I may have access to anyone outside SunPower, unless otherwise authorized in writing by SunPower.

2.    Upon leaving the employment of SunPower, I understand that I may use any skill gained from employment with SunPower which is of a general nature and is not an invention, discovery, or improvement developed within the course and scope of my employment or based on or utilizing SunPower confidential or proprietary information of the kind described herein, or is

EXHIBIT B

AGREEMENT CONCERNING
PROPRIETARY INFORMATION AND INVENTIONS

confidential information of SunPower or any third person to which I may have had access during my employment.

3.      During and after my employment with SunPower, I agree to disclose promptly in writing to SunPower Corporation or its designee all inventions, improvements, and discoveries and other information of the kind described above, made, conceived, or reduced to practice by me, either solely or jointly with others, during my employment with SunPower, whether or not during regular working hours, which relate to any subject matter with which my work with SunPower is or may be concerned, or which relate to the business or activities carried on by SunPower and to any reasonable expansion of such business and activities.

4.      During and after my employment with SunPower, I agree that all inventions, improvements, and discoveries and other information of the kind described above, are and shall remain the property of SunPower, whether or not patent applications are filed thereon.  I hereby assign and agree to assign to SunPower Corporation or its designee any such inventions, improvements, and discoveries which SunPower may deem to be patentable inventions, whether or not such inventions were reduced to practice during the period of my employment, and to execute all patent applications, assignments, and other documents, and to provide all reasonable assistance, as may be necessary or requested, to vest in SunPower Corporation or its designee the entire right, title and interest in and to such inventions and in and to any patents obtainable therefor in the United States and foreign countries.  SunPower shall assume the entire expense of preparing, filing, and prosecuting such applications for patents.

5.      During and after my employment with SunPower, I agree to assign to SunPower Corporation or its designee any inventions, improvements, or discoveries conceived by me after I leave the employ of SunPower if same are based on or utilize SunPower confidential information of the kind described above, which I obtained or had access to while in the employ of SunPower, and to assist SunPower in preparing, filing and prosecuting patents for such inventions, improvements or discoveries in the manner described in above.  In the event that I refuse, neglect or am unable to perform any act, including, but not limited to, executing any documents, relating to the assignment, preparation, filing, and prosecution of patents for such inventions, improvements or discoveries, I hereby appoint SunPower's counsel and/or SunPower's corporate secretary or another SunPower designee to act as my attorney for the purpose of securing SunPower's rights therein, including providing these appointed persons with full authority to execute any necessary documents on my behalf to effectuate the purposes of this paragraph.

6.      During and after my employment with SunPower, I agree that all writings, drawings, designs, or other creative renditions of works which are prepared or conceived by me, solely or jointly with others, in connection with SunPower business or at SunPower expense or in the course of my employment by SunPower or that contain SunPower proprietary business or technical information, including all copies of same, shall be disclosed to and be and become the property of SunPower Corporation or its designee.  All copyright, trademark and other proprietary rights that may exist or be available on any of such matters shall be and become the sole property of SunPower Corporation or its designee and I agree, upon request whenever made and at the expense of SunPower but without additional compensation, to execute all papers and documents to otherwise assist and cooperate with SunPower to secure and protect SunPower rights therein.

7.      During my employment with SunPower, I will not use or disclose any confidential or proprietary information or trade secrets of my former employers or companies, or any third party, if any, and that I will not bring onto the SunPower premises any unpublished document or any property belonging to my former employers or companies, or any third party, if any, unless consented to in writing by said employers, companies or third party.

8.      I agree that upon termination of employment, whenever and for whatever reasons, I will surrender to SunPower all SunPower information of the kind thereof, in whatever form or medium, including any copies.

9.      During the term of my employment with SunPower and for a period of two (2) years thereafter, I agree that I will not solicit or encourage, or cause, or enable others to solicit or encourage, any employees of SunPower to terminate their employment with SunPower.

10.     During my employment with SunPower, I agree to refrain from engaging in any business or activity that is either competitive with, or places me in a conflict with the full, faithful, and efficient discharge of my employment duties.

11.     All records, reports, notes, compilations, calendars, notebooks, or other recorded matter, and copies or reproductions thereof, relating to SunPower's operations, activities, or business, made or received by me during the period of my employment with SunPower are and shall remain SunPower's exclusive property, and I agree I will keep the same at all times in SunPower's custody and subject to its control, and will surrender the same at or before the termination of my employment with SunPower.

EXHIBIT B

AGREEMENT CONCERNING
PROPRIETARY INFORMATION AND INVENTIONS

12. I agree that this agreement shall be binding upon me, my heirs, and my legal representatives and is binding upon and shall inure to the benefit of SunPower, its successors and assigns.

13. I agree that this Agreement shall be governed and construed according to the laws of the State of California, without regard to its conflict of interest laws.

14. I agree that in the event of a breach of any of the provisions of this Agreement, SunPower will suffer irreparable and permanent damages and injury for which monetary relief will not be adequate and, in addition to any and all rights, in law or in equity, that may be available to SunPower, SunPower shall be entitled to immediate injunctive relief without the need to post any bond or security in order to obtain same, and shall also be entitled to recover its reasonable attorney's fees in addition to any other damages.

15. I agree that any failure of SunPower at any time or times to require performance of any provision of this Agreement shall in no manner affect SunPower's available remedies or right at a later time to enforce the same. No waiver by SunPower of any condition, or of the breach of any term, covenant, representation or warranty contained in this Agreement, whether by conduct or otherwise (in any one or more instances) shall be deemed to be or construed as a further or continuing waiver of any such condition or breach or of any remedy or as a waiver of any other condition or as a breach of any other term, covenant, representation or warranty of this Agreement.

16. No person has made any promise or representation to me related to the subject matter of this Agreement, except for the promises and representations expressly written in this Agreement. I have not relied on any such promise or representation and I understand that SunPower does not allow any person to make any such promise or representation.

17. I agree that this Agreement, together with its Attachment I, sets forth the entire agreement and understanding of the parties relating to the subject matter

hereof and merges all prior or concurrent discussions between the parties and any and all prior or concurrent agreements concerning protection, ownership, and use of inventions, discoveries, improvements and other information of the kind described above between myself and SunPower.

18. I AM HEREBY NOTIFIED THAT, PURSUANT TO SECTION 2870 OF THE CALIFORNIA LABOR CODE, NO ASSIGNMENT TO SUNPOWER IS REQUIRED FOR ANY INVENTION, DISCOVERIES, IMPROVEMENTS OR INFORMATION OF THE KIND DESCRIBED ABOVE, FOR WHICH NO EQUIPMENT, SUPPLIES, FACILITY, OR CONFIDENTIAL OR PROPRIETARY INFORMATION OF SUNPOWER WAS USED AND WHICH WAS DEVELOPED ENTIRELY ON MY OWN TIME UNLESS (a.) THE INVENTION OR INFORMATION RELATES (i.) DIRECTLY TO THE BUSINESS OF SUNPOWER, OR (ii.) TO SUNPOWER'S ACTUAL OR DEMONSTRABLY ANTICIPATED RESEARCH AND DEVELOPMENT, OR (b.) THE INVENTION INFORMATION RESULTS FROM ANY WORK PERFORMED BY ME FOR SUNPOWER.

19. I AM FURTHER NOTIFIED THAT I SHALL NOT BE OBLIGATED TO ASSIGN TO SUNPOWER ANY INVENTION, DISCOVERIES, IMPROVEMENTS OR INFORMATION OF THE KIND DESCRIBED ABOVE, WHICH RELATE TO OR WOULD BE USEFUL IN ANY BUSINESS OR ACTIVITY IN WHICH SUNPOWER IS OR MAY BECOME ENGAGED WHICH WERE CONCEIVED, ACQUIRED OR REDUCED TO PRACTICE PRIOR TO MY EMPLOYMENT WITH SUNPOWER PROVIDED THAT ALL SUCH INVENTIONS, PATENTED AND UNPATENTED, AND INFORMATION ARE LISTED AT THE INITIAL TIME OF MY EMPLOYMENT IN ATTACHMENT I TO THIS AGREEMENT.

20. I have read and understood all of the provisions of this Agreement. I have had the opportunity to seek independent advice and counsel related to this Agreement.

21. Lastly, I agree that any violation of this Agreement while I am employed by SunPower may be considered as grounds for disciplinary action up to and including termination of my employment and/or any legal action and/or equity proceeding to exercise SunPower's rights and/or to secure SunPower's remedies.

THIS AGREEMENT DOES NOT BIND EITHER PARTY TO ANY SPECIFIC PERIOD OF EMPLOYMENT; I UNDERSTAND THAT MY EMPLOYMENT BY SUNPOWER IS AT WILL.

Dated this 1⁸ day of _May_ , 20 0⁹

Witness

Accepted and Agreed to:

SunPower Corporation

Employee Signature

By: _Maribelle Daclan_

Title: _Sr. HRBP_

Confidential                    Page 3

EXHIBIT B

AGREEMENT CONCERNING
PROPRIETARY INFORMATION AND INVENTIONS

Date: _____ _____

EXHIBIT B

AGREEMENT CONCERNING
PROPRIETARY INFORMATION AND INVENTIONS

**ATTACHMENT I**

_____
(Name of Employee)

PLEASE LIST PRIOR INVENTIONS, BOTH PATENTED AND UNPATENTED AND ANY OTHER INFORMATION OF THE KIND DESCRIBED IN THIS AGREEMENT WHICH YOU WANT TO REMOVE FROM THE OPERATION OF THIS AGREEMENT <u>OR</u> INITIAL THE STATEMENT BELOW IF NONE:

1. _____

2. _____

3. _____

4. _____

5. _____

(Attach more paper if necessary)

_____    I have no such prior inventions, patented or unpatented, or other information which I want excepted from the assignment and use commitments of this Agreement.

EXHIBIT B

# EXHIBIT C



**TITLE:  ACCEPTABLE USE OF SUNPOWER INFORMATION RESOURCES**

1. PURPOSE AND SCOPE

   1.1.   Purpose: SunPower's information resources exist in order to support SunPower's business purposes. Inadvertent or intentional misuse can damage SunPower's business, its customers, vendors, partners, shareholders, and employees. These practices are intended to minimize that damage.

   1.2.   Scope: This procedure is applicable to all SunPower employees, contractors, consultants, service providers, and temporary workers when using SunPower information resources including software, web browsers, email, computer systems, workstations, PCs, servers, mobile devices, entities connected on the network, software, data, telephones, voice mail, fax machines, and any information resources that could be considered valuable to SunPower's business, in all locations.

2. RESPONSIBILITIES

   2.1.   SunPower's Global Information Security Department is responsible for defining these practices.

   2.2.   All SunPower employees, contractors, consultants, service providers, and temporary workers are responsible for following these practices.

3. REFERENCED DOCUMENTS

   3.1.   001-58775 External Communication Policy

   3.2.   001-58223 Code of Business Conduct and Ethics

   3.3.   001-62863 Information Classification, Labeling, and Handling Practices

4. MATERIALS AND EQUIPMENT

   4.1.   n/a

5. SAFETY

   5.1.   n/a

6. PROCESS DEFINITION AND CONTROLS

   6.1.   What to do:

      6.1.1.   Protect SunPower's intellectual property and keep it confidential

      6.1.2.   Report any unauthorized or inappropriate use, or any security concerns

EXHIBIT C

6.1.3.   Follow the guidance in SunPower's Information Classification, Labeling, and Handling document

6.1.4.   Use Blind Carbon Copy (BCC) instead of Carbon Copy (CC) field when sending email to more than one external (non-SunPower) email address, to avoid violating the privacy of our clients, customers, and business partners by exposing their contact information.

6.2.   What not to do:

6.2.1.   Do not forward, provide access, store, distribute, and/or process SunPower confidential information to unauthorized people or places, or post SunPower confidential information on Internet bulletin boards, chat rooms, or other electronic forums

6.2.2.   Do not access SunPower information resources, company records, files, information, or any other data when there is no proper, authorized, job-related need for such information

6.2.3.   Do not provide false or misleading information to obtain access to SunPower information resources

6.2.4.   Do not use any account and/or password that has not been assigned to you

6.2.5.   Do not perform any conduct which may harm the reputation of SunPower or violate our Code of Business Conduct and Ethics

6.2.6.   Do not view offensive websites, send or forward offensive email

6.2.7.   Do not place personal files on company computing servers

6.2.8.   Do not connect any non-SunPower-owned equipment to SunPower's network

6.2.9.   Do not install personally-owned software or non-licensed software on company computers

6.3.   Confidentiality of SunPower Data

6.3.1.   Assume that any information not expressly labeled with a confidentiality level is confidential, and treat it as such. Do not disclose any confidential information to anyone without the receiving party having a clear need to know, and conform to SunPower's Information Classification, Labeling, and Handling guidance. Note that disclosure includes any form of communication including verbal, voice-mail, e-mail, Internet, paper, and any other form of communication.

6.4.   Personal Privacy

EXHIBIT C

6.4.1.   To the extent permitted by law, SunPower may at any time for any purpose access any information on company issued equipment and may print or copy files, email, hardcopy, or backups.  Such uses may include but are not limited to requests from government agencies, law enforcement agencies or as part of litigation, as required by law.  There is no expectation of personal privacy in respect to data stored by any employee on or used by any employee on SunPower's computers except in certain jurisdictions where an employer is not allowed to override the right to privacy. SunPower may access such data and computer use information (for example, server logs, access logs, and computer settings) for the above purposes, to check and enforce compliance with SunPower's internal policies and for other legitimate business purposes (for example, to access business correspondence in the event of an employee absence, to evaluate technical computer infrastructure requirements such as data storage sizing, or to troubleshoot problems).

6.5.   What SunPower May Monitor

6.5.1.   To the extent permitted by law, SunPower reserves the right to examine user files, data, and email when required to identify disk space usage requirements for the purposes of storage capacity enhancement and planning, disk usage control, or appropriate use investigation.

6.5.2.   To the extent permitted by law, SunPower reserves the right to monitor email for the following activity:

6.5.2.1.   Non-business use

6.5.2.2.   Inflammatory, unethical, or illegal content

6.5.2.3.   Disclosure of company confidential information

6.5.3.   To the extent permitted by law, SunPower reserves the right to monitor connections to the Internet for the following activity:

6.5.3.1.   Attempts to access inappropriate websites

6.5.3.2.   Unauthorized network services hosted by employees

6.6.   PCI-DSS (Credit Card Industry) Compliance

6.6.1.   In order to avoid issues with compliance with credit card industry requirements, SunPower and its employees, contractors, and business partners may not store any credit card information in electronic form on any system owned by SunPower or under SunPower's control.

7.   RECORDS: N/A

8.   APPENDIX / GENERAL INFORMATION: N/A

EXHIBIT C

# EXHIBIT D



SunPower Corporation, 3939 North First Street, San Jose, CA 95134

## TITLE:  INFORMATION ACCESS CONTROL PRACTICES

1. PURPOSE AND SCOPE

   1.1.   Purpose:  SunPower's information resources exist in order to support SunPower's business.  To reduce risks to those resources, we control access to information, information processing facilities, and business processes, ensure correct access for authorized users and prevent unauthorized access to information and information systems, prevent unauthorized access to network services, and ensure information security when telecommuting and when using mobile computing devices.

   1.2.   Scope: All SunPower information resources including software, web browsers, email, computer systems, workstations, PCs, servers, mobile devices, entities connected on the network, software, data, telephones, voice mail, fax machines, and any information resources that could be considered valuable to SunPower's business, in all locations.

2. RESPONSIBILITIES

   2.1.   SunPower Global Information Security is responsible for defining, obtaining approval for, maintaining, and publishing these practices.

   2.2.   These practices are performed by all SunPower employees, contractors, consultants, service providers, and temporary workers at SunPower or of any of its affiliates who build and support information systems, in all locations.

   2.3.   Compliance is monitored by SunPower Global Information Security and enforced by SunPower Human Resources.

3. REFERENCED DOCUMENTS

   3.1.   001-03192 IT ENVIRONMENT AND SYSTEM SECURITY PROCEDURE

   3.2.   001-03195 SUNPOWER DATA STORAGE REQUIREMENT

   3.3.   001-03196 MANUFACTURING TOOL PC HARDWARE AND SOFTWARE STANDARDS

   3.4.   001-05051 ADMINISTRATION GUIDELINES FOR INFORMATION SECURITY SETTINGS

   3.5.   001-48727 LINUX SERVER SYSTEM SECURITY REQUIREMENT

   3.6.   001-48728 GUIDELINES FOR ORACLE APPLICATIONS USER ACCOUNT MANAGEMENT

   3.7.   001-64241 INFORMATION ASSET SECURITY PRACTICES

EXHIBIT D

3.8.    001-64242 INFORMATION SYSTEMS SECURITY PRACTICES

3.9.    001-64243 Global Security Standards

3.10.   001-64245 IT Administrator Acceptable Use Agreement

3.11.   001-64246 Password Selection Guidelines

4.  MATERIALS AND EQUIPMENT: N/A

5.  SAFETY: N/A

6.  OPERATING PROCEDURES AND RESPONSIBILITIES

6.1.    Unattended System Protection

6.1.1.    Ensure that unattended computing equipment has appropriate protection

6.1.1.1.    Systems should terminate active (logged-in) sessions before a device is left unattended, unless the device can be securely "locked" (e.g., with a password-protected screensaver)

6.1.1.2.    Physically secure devices such as laptops, or the area in which a device is located, with a key-lock or equivalent if a device will be unattended

6.2.    Mobile Computing and Communications

6.2.1.    Controls apply to laptop, notebook, and palmtop computers, mobile phones and "smart" phone-PDAs and portable storage devices and media

6.2.1.1.    Devices are physically protected where feasible

6.2.1.2.    Data storage on mobile devices is deleted when the device is lost or stolen

6.2.1.3.    Mobile devices employ access controls

6.2.1.4.    Cryptographic techniques are used to prevent interception of mobile data

6.2.1.5.    Mobile device data is backed up

6.2.1.6.    Operating system and other software is kept up-to-date

6.2.1.7.    Secure communication (e.g., VPN) are used for remote access

6.2.1.8.    Data and configurations on mobile devices are securely deleted prior to transfer or disposal

6.3.    Active Directory

6.3.1.    All applications are to be integrated with Active Directory (except Oracle and applications that do not support integration), such that they use Active Directory for authentication of end users, evaluation of group membership, and access rights within the application granted based on Active Directory membership.

EXHIBIT D

6.3.2.  Active Directory user information is provided by Oracle.  Oracle is the authoritative source for user information.

6.3.3.  SunPower's internal Active Directory infrastructure is used to support internal employees, contractors, consultants, service providers, and temporary workers in all locations.

6.3.4.  An external Active Directory infrastructure or LDAP connector on SunPower's DMZ must be used for external (customer) user accounts or third party integration.

6.3.5.  Third party services that require authentication for SunPower users over the Internet must use an LDAP connector in SunPower's DMZ.  Direct connections to SunPower domain controllers from the Internet are not allowed.

6.4.  User access management

6.4.1.  Application access controls must include rules and rights based on user profiles, where information requiring different levels of access is presented.

6.4.1.1.  Formal procedures are used to control the allocation of access rights

6.4.1.2.  Requirements are defined for formal authorization of access requests ("provisioning")

6.4.1.3.  Requirements are defined for authorization and timely removal of access rights ("de-provisioning").

6.4.1.4.  Operational procedures cover all stages in the life-cycle of user access, from provisioning to de-provisioning

6.4.1.5.  Each user is assigned a unique user-ID based on their name

6.4.1.6.  Contractor system accounts must have an expiration date set, and the system authentication software must automatically deactivate the account on the expiration date.

6.4.1.7.  New users may be defined to the system prior to his or her actual hire date, but the account must remain locked until the employee's start date.

6.4.1.8.  Special attention is given to control of privileged ("super-user") access rights

6.4.1.9.  Service accounts that are only used by applications contain the application name, do not expire, and are not used by any end users

6.4.1.10.  Documentation of approval from data system owner is maintained for each user's access

6.4.1.11.  Confirmation is provided by supervisor or other management that each user's access is consistent with business purposes and other security policy controls

6.4.1.12.  GHD maintains a current record of all users authorized to use SunPower services

EXHIBIT D

6.4.1.13. Access rights are immediately changed or eliminated for users who have changed roles or left the organization

6.4.1.14. Global Information Security periodically checks for and removes redundant or apparently unused user-IDs.

6.5. Password Management

6.5.1. Allocation of passwords is controlled through a formal management process as follows:

6.5.1.1. Users are informed that they must keep their individual passwords confidential

6.5.1.2. Secure methods are used for creating and distributing temporary, initial-use passwords

6.5.1.3. Users are required to change any temporary, initial-use password

6.5.1.4. Procedures are used to verify a user's identity prior to providing a replacement password ("password reset")

6.5.1.5. "Loaning" of passwords is prohibited

6.5.1.6. Passwords are not to be stored on computer systems in unprotected form

6.5.1.7. All default vendor passwords are changed

6.5.2. Users are to follow good security practices in the selection and use of passwords

6.5.2.1. Keep passwords confidential and do not "share" them

6.5.2.2. Avoid keeping a paper or electronic record of passwords, unless this can be done securely

6.5.2.3. Change a password when there is any suspicion that it has been compromised, and report the suspicion

6.5.2.4. Change passwords periodically

6.5.2.5. Change a temporary password on first log-on

6.5.2.6. Passwords must be at least 8 characters long.

6.5.2.7. Passwords must contain at least three of the following four types: upper case letters, lower case letters, numbers, non-alphanumeric (such as punctuation or special characters)

6.5.2.8. Login account names must not be used in any form in a password

6.6. System-enforced Account and Password Rules

6.6.1. Passwords expire every 90 days.

6.6.2. Passwords may not be repeated within a 10-time cycle.

6.6.3. Initial or reset passwords (set by a security administrator) must be valid only for the users' first or next login.  At that time, the system must prompt the user to select a new password.

EXHIBIT D

      6.6.4.     After three unsuccessful attempts to enter a password, the user ID must be suspended until reset by a system or security administrator after appropriate user authentication.

      6.6.5.     Systems display of a general notice warning about authorized and unauthorized use

      6.6.6.     Validation or rejection of login is done only on completion of all input data (e.g., both user-ID and password) and the user is not notified which field is incorrect

      6.6.7.     Passwords are never displayed as entered (e.g., hide with symbols)

      6.6.8.     Passwords are not transmitted in clear text

      6.6.9.     Unsuccessful log-on attempts are limited

7.  RECORDS: N/A

8.  APPENDIX / GENERAL INFORMATION / PROCESS MAP:  N/A

EXHIBIT D

# EXHIBIT E



SunPower Corporation, 3939 North First Street, San Jose, CA 95134

## TITLE:  INFORMATION CLASSIFICATION, LABELING, AND HANDLING

1. PURPOSE AND SCOPE

   1.1.   Purpose: Information is an important corporate asset.  These practices are intended to help employees protect SunPower's information from unauthorized access, modification, disclosure, and destruction.  The best way to protect our information assets it is to clearly identify confidentiality, determine the most appropriate forms of disclosure, and ensure secure handling.

   1.2.   Scope: These practices are followed by everyone who handles information at SunPower or any of its affiliates globally including employees, contractors, consultants, business partners, and service providers who handle SunPower information in any form, including electronic and printed.

2. RESPONSIBILITIES

   2.1.   SunPower's Global Information Security Department is responsible for defining these practices.

   2.2.   All SunPower employees, contractors, consultants, service providers, and temporary workers are responsible for following these practices.

   2.3.   To facilitate the protection of corporate information, employee responsibilities have been established at two levels:  Owner and User.

      2.3.1.   Owner: Management of the organizational unit where the information is created, or management of the organizational unit that is the primary consumer of the information.  Owners are responsible to:

         2.3.1.1.   Identify the classification level of all corporate information within their organizational unit

         2.3.1.2.   Authorize access to those who have a business need for the information

         2.3.1.3.   Ensure removal of access from those who no longer have a business need for the information

         2.3.1.4.   Work with SunPower Global Information Security and Intellectual Property Counsel to determine which safeguards are appropriate to protect the confidentiality, integrity, and availability of the information

         2.3.1.5.   Monitor safeguards to ensure they are properly implemented and effective

EXHIBIT E

      2.3.2.   User: Individual authorized by the owner to access information and use the safeguards established by the owner.

## 3.  REFERENCED DOCUMENTS

3.1.    001-58775 External Communication Policy

3.2.    001-58223 Code of Business Conduct and Ethics

3.3.    001-62462 Acceptable Use of SunPower Information Resources

## 4.  MATERIALS AND EQUIPMENT: N/A

## 5.  SAFETY: N/A

## 6.  OPERATING PROCEDURES AND RESPONSIBILITIES

6.1.1.   Information Owners classify all information generated or held by the company and its affiliates according to its content as either Public or Confidential, and is to be labeled and handled as follows.

6.1.2.  Public

6.1.2.1.   Definition: Information that has been made available for public distribution through authorized company channels.

6.1.2.2.   Confidentiality Level:  Not sensitive in context or content; can be freely distributed and is available to anyone both inside and outside the company once approved for release.

6.1.2.3.   Examples:

6.1.2.3.1.   Released marketing and advertising material

6.1.2.3.2.   Press releases

6.1.2.3.3.   Records contained on the public company website

6.1.2.3.4.   Released corporate annual reports

6.1.2.4.   Labeling:  Document and storage media may be marked "Public" on title or cover page.

6.1.2.5.   Distribution:  No special requirements; generally available within and outside the company.

6.1.2.6.   Duplication:  No special requirements.

6.1.2.7.   Release:  No special requirements.

6.1.2.8.   Email:  No special requirements                  .

6.1.2.9.   Fax, mail:  No special requirements.

6.1.2.10.  Storage:  Master copy secured against destruction.

6.1.2.11.  Disposal:  No special requirements.

6.1.3.  Internal

EXHIBIT E

6.1.3.1.   Definition: Information intended for use by any employee or third party during the commission of SunPower business, but not intended for disclosure to the general public.

6.1.3.2.   Confidentiality Level:  Can be shared with any company employee, contractor, or third party with a need to know the information.

6.1.3.3.   Integrity Requirement:  Protected from unauthorized access and modification.

6.1.3.4.   Examples:

6.1.3.4.1.   Internal memos, correspondence, and other documents

6.1.3.4.2.   General email and instant message discussions

6.1.3.4.3.   Announcements, meeting requests

6.1.3.4.4.   Discussion of supply and demand details with vendors and third party suppliers

6.1.3.4.5.   General information about our company such as particular products we are interested in

6.1.3.4.6.   General presentation materials

6.1.3.5.   Labeling:  Document and storage media may be marked "Internal" on title or cover page.

6.1.3.6.   Distribution:  Information Owner decides appropriate use.

6.1.3.7.   Duplication:  No special requirements.

6.1.3.8.   Release:  No special requirements.

6.1.3.9.   Email:  E-mailing permitted only to employees or authorized contractors and third parties.

6.1.3.10.  Fax, mail:  Permitted only to employees or authorized contractors and third parties.

6.1.3.11.  Storage:  Master copy secured against destruction.

6.1.3.12.  Disposal:  No special requirements.

6.1.4.   Confidential

6.1.4.1.   Definition: Information that, if disclosed, could violate the privacy of individuals, reduce the company's competitive advantage, and / or cause damage to the company.  Intended for use inside the company based on need to know, but only to anyone outside the company under restricted conditions.

6.1.4.2.   Confidentiality Level:  Can be shared with any company employee and contractors with a need to know the information.  Available only to external audiences with a need to know for business related purposes under Non-Disclosure Agreements (NDAs) or equivalent obligations of confidentiality.  Not to be shared with unapproved

EXHIBIT E

audiences outside the company. Transmitted and stored in encrypted form if deemed necessary by the Owner or by Information Security.

6.1.4.3.   Examples:

6.1.4.3.1.   Operational business information and reports, company operations and processes

6.1.4.3.2.   Research and development, manufacturing processes, trade secrets

6.1.4.3.3.   Projects that operate independently of normal research and development operations

6.1.4.3.4.   Strategic corporate information, product roadmaps, process descriptions, research plans, formulas, electronic codes

6.1.4.3.5.   Supplier, customer, reseller, and installer data; customer lists and contact information

6.1.4.3.6.   Financial forecasts and earnings announcements, financial data

6.1.4.3.7.   Shareholder information that is not a part of public record

6.1.4.3.8.   Employee work phone or voice mail directory, organizational charts

6.1.4.3.9.   Personnel records, personnel files, salaries, performance information, health insurance records, personal information

6.1.4.3.10.  Litigation information

6.1.4.3.11.  Passwords and encryption keys

6.1.4.3.12.  Corporate policies, standards, and procedures

6.1.4.3.13.  Internal company announcements, meeting presentation materials, marketing data

6.1.4.4.   Labeling:  Document owner should appear on cover or title page. Each page of document should be labeled "Confidential".

6.1.4.5.   Distribution:  Information Owner decides user access rules.

6.1.4.6.   Duplication:  Information Owner decides permissions.

6.1.4.7.   Release:  Only under Non-Disclosure Agreement (NDA) or equivalent obligations of confidentiality if necessary.

6.1.4.8.   Email:  Only to employees or authorized contractors and third parties.

6.1.4.9.   Encryption:  Data encryption determined by Owner and Information Security.

EXHIBIT E

6.1.4.10. Fax, mail:  Mailing requirements determined by information owner.

6.1.4.11. Storage:  Master copy secured against destruction.  Locked up when not in use.  Fixed media encrypted and employ physical access control.  Removable media encrypted.

6.1.4.12. Disposal:  Paper copies: Shredding or securing in locked bin for future destruction required.

6.1.4.13. Other storage media:  Destruction beyond ability to recover.

7.  RECORDS: N/A

8.  APPENDIX / GENERAL INFORMATION / PROCESS MAP: N/A

EXHIBIT E

EXHIBIT F



SunPower Corporation, 3939 North First Street, San Jose, CA 95134

## TITLE:  FILE STORAGE AND TRANSFER GUIDELINES

1. **PURPOSE AND SCOPE**

   1.1. Purpose: SunPower's information and data exist in order to support SunPower's business.  Information is one of the most important assets a company can possess.  Because information is so important, it needs to be protected.  To reduce risks to that information and data, we control access to information, and ensure information security when transferring files and data.

   1.2. Scope: All SunPower employees, contractors, consultants, service providers, and temporary workers when using SunPower information resources need to follow these guidelines when transferring files between computers or onto storage devices, in all locations.

2. **RESPONSIBILITIES**

   2.1. SunPower Global Information Security is responsible for defining, obtaining approval for, maintaining, and publishing these guidelines.

   2.2. These guidelines are followed by all SunPower employees, contractors, consultants, service providers, and temporary workers at SunPower or of any of its affiliates who build and support information systems, in all locations.

   2.3. Compliance is monitored by SunPower Global Information Security and enforced by SunPower Human Resources.

3. **REFERENCED DOCUMENTS: N/A**

4. **MATERIALS AND EQUIPMENT (N/A)**

5. **SAFETY (N/A)**

6. **OPERATING PROCEDURES AND RESPONSIBILITIES**

   6.1.1. Don't use USB drives (including flash memory, USB sticks, or external USB hard drives) for file storage or transfer.

   6.1.2. We have file servers with secure access permissions set up for your use in storing your files, so you can keep them private or share them within your department.

   6.1.3. If you need to share files with an external company, contact Global HelpDesk to get set up on our approved corporate file sharing service.

EXHIBIT F

6.1.4.    Music, movies, and other personal files should not be stored on SunPower's file servers.

7.  RECORDS: N/A

8.  APPENDIX / GENERAL INFORMATION / PROCESS MAP:  N/A

EXHIBIT F

# EXHIBIT G

# EMPLOYEE NONDISCLOSURE AGREEMENT

This Agreement is made and entered into by and between SunPower Corporation, Inc. (SunPower), having offices at 430 Indio Way, Sunnyvale, CA 94085, and _____Vikas   Desai_____, (the Employee), each of which may hereinafter be referred to as the "party" or "the Parties" respectively. In consideration of new or continued employment by SunPower and services provided to SunPower pursuant to such employment, the Employee and SunPower hereby agree as follows:

## 1.    CONFIDENTIALITY

a) "Confidential Information" means any SunPower proprietary information, technical data, trade secrets or know-how, including, but not limited tom research, product plans, products, services, suppliers, supplier lists, customers, customer lists, markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed by SunPower either directly or indirectly in writing, orally or by drawings or inspection of parts or equipment.

b) Employee will not, during or subsequent to the term of this Agreement, use SunPower's Confidential Information for any purpose whatsoever other than the performance of his(her) responsibilities as an employee of SunPower or disclose SunPower's Confidential Information to any third party, and it is understood and agreed that said Confidential Information shall remain the sole property of SunPower.

c) Employee agrees that Employee will not, during the term of this Agreement, improperly use or disclose any Confidential Information or trade secrets of any former or current employer or other person or entity with which Employee has an agreement or duty to keep in confidence information acquired by Employee in confidence, if any, and that Employee will not bring onto the premises of SunPower any unpublished document or Confidential Information belonging to such employer, person or entity unless consented to in writing by such employer, person or entity. employee will indemnify SunPower and hold it harmless from and against all claims, liabilities, damages and expenses, including reasonable attorneys' fees and costs of suit, arising our of or in connection with any violation or claimed violation of a third party's rights resulting in whole or in part from SunPower's use of the work product of Employee under this Agreement.

d) Employee recognizes that SunPower has received and in the future will receive from third parties their Confidential Information subject to a duty on SunPower's part to maintain the confidentiality of such information and to use it only for certain limited purposes. Employee agrees that Employee owes SunPower and such third parties, during the term of this Agreement and thereafter, a duty to hold all such Confidential Information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out his/her responsibilities as an employee of SunPower consistent with SunPower's agreement with such third party.

EXHIBIT G

e) Upon the termination of this Agreement, or upon SunPower's earlier request, Employee will deliver to SunPower all of SunPower's property or Confidential Information in tangible form that Employee may have in Employee's possession or control.

## 2.   OWNERSHIP

a) Employee agrees that all copyrightable material, notes, records, drawings, designs, inventions, improvements, developments, discoveries and trade secrets (Inventions) conceived, made or discovered by Employee,  solely or in collaboration with others, during the period of this Agreement which relate in any manner to the business of SunPower that Employee may be directed to undertake, investigate or experiment with, or which Employee may become associates with in work, investigation or experimentation in the line of business of SunPower in performing his responsibilities as an employee of SunPower hereunder, are the sole property of SunPower.  In addition, any Inventions which constitute copyrightable subject matter shall be considered "works made for hire" as that term is defined in the United States Copyright Act.  Employee further agrees to assign (or cause to be assigned) and does hereby assign fully to SunPower all such Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto.

b) Employee agrees to assist SunPower, or its designee, at SunPower's expense, in every proper way to secure SunPower's rights in the Inventions and any copyrights, patent, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to SunPower of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which SunPower shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to SunPower, its successors, assigns and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto.  Employee further agrees that Employee's obligation to execute or cause to be executed, when it is in Employee's power to do so, any such instrument or papers shall continue after the termination of this Agreement.

c) With the exception of any Prior Inventions (as defined below) listed on Schedule 1 attached hereto, Employee agrees that if in the course of performing his responsibilities as an employee of SunPower, Employee incorporates into any Invention developed hereunder any invention, improvement, development, concept, discover or other proprietary information owned by Employee or in which Employee has an interest (Prior Inventions), SunPower is hereby granted and shall have a nonexclusive, royalty-free, perpetual, irrevocable, worldwide license to make , have made, modify, use and sell such item as part of or in connection with such Invention.

d) employee agrees that if SunPower is unable because of Employee's unavailability, mental or physical incapacity, or for any other reason, to secure Employee's signature to apply for or to pursue any application for any United States or foreign patents or mask work or copyright registrations covering the Inventions assigned to SunPower above, the Employee hereby

EXHIBIT G

irrevocably designates and appoints SunPower and its duly authorized officers and agents as Employee's agent and attorney-in-fact, to act for and in Employee's behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of patents copy right and mask work registrations thereon with the same legal force and effect as if executed by Employee.

e)   Notwithstanding any other provision of the Section 2, this Section 2 shall not apply to and Invention that qualifies in all respects under Section 2870 of the California Labor Code, which provides:

"(a)   Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)   Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer.

(2)   Result from any work performed by the employee for the employer.

(b)   To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

f)   Employee shall advise SunPower promptly and in writing of any of his works or inventions which he believes qualify under California Labor Code Section 2870.  SunPower agrees to receive such information in confidence.

## 3.   CONFLICTING OBLIGATIONS

Except as set forth on Schedule 2 attached hereto, Employee certifies that Employee has no outstanding agreement or obligation that is in conflict with any of the provisions of this Agreement, or that would preclude Employee from complying with the provisions hereof, and further certifies that Employee will not enter into any such conflicting Agreement during the term of this Agreement.

## 4.   REPORT TO COMPANY

Except as limited by agreements described on Schedule 2 attached hereto, Employee agrees that Employee will promptly disclose and describe to SunPower all Inventions made or conceived by Employee, either alone or with others, during the term of his employment, and, to the extent that such Inventions relate in any way to or are useful in SunPower's business as

EXHIBIT G

presently conducted or then conducted, disclose and describe such Inventions to SunPower for a period of one (1) year after the end of Employee's employment by SunPower.

## 5.    ARBITRATION AND EQUITABLE RELIEF

a)  Except as provided in Section 6(b) below, SunPower and the Employee agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of the Agreement, shall be settled by arbitration to be held in Santa Clara or San Mateo County, California, in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court of competent jurisdiction. SunPower and the Employee shall each pay one-half of the costs and expense of such arbitration and each shall separately pay its respective counsel fees and expenses.

b)  Employee agrees that it would be impossible or inadequate to measure and calculate SunPower's damages from any breach of the covenants set forth in Sections 1 or 2 herein. Accordingly, Employee agrees that if Employee breaches Sections 1 or 2, SunPower will have available, in addition to any other right or remedy available, the right to obtain from any court of competent jurisdiction an injunction restraining such breach or threatened breach and specific performance of any such provision. Employee further agrees that no bond or other security shall be required in obtaining such equitable relief and Employee hereby consents to the issuances of such injunction and to the ordering of such specific performance.

## 6.    GOVERNING LAW

This Agreement shall be governed by the laws of the State of California as applied to agreements entered into and performed solely within California by residents of that state.

## 7.    ENTIRE AGREEMENT

This agreement is the entire agreement of the parties and supersedes any prior agreements between them with respect to the subject matter hereof.

## 8.    WAIVER

Waiver of any term or provision of this Agreement or forbearance to enforce any term or provision by either party shall not constitute a waiver as to any subsequent breach or failure of the same term or provision or a waiver of any other term or provision of the Agreement.

## 9.    TERM AND TERMINATION

a)  This Agreement shall be effective when executed by both parties and will continue so long as Employee is employed by SunPower.

EXHIBIT G

b) This Agreement does not confer upon Employee any right with respect to continuation of employment by SunPower, nor shall it interfere in any way with his right or SunPower's right to terminate his employment at any time, which right is reserved.

c) Upon termination of employment all rights and duties of the parties toward each other shall cease except that Sections 1 (Confidentiality), 2 (Ownership) and 4 (Report to Company) shall survive termination of this Agreement.

SUNPOWER CORPORATION

By: _____

Title: _____

Dated: __4/14/04__

EMPLOYEE

_____

___VIKAS    DESAI___

Dated: __04/14/2004__

EXHIBIT G

**SCHEDULE 1**
**(List prior Inventions as described in Section 2C)**

EXHIBIT G

**SCHEDULE 2**
**(List Conflicting Obligations as describes in Section 3)**

EXHIBIT G

EXHIBIT H

## CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT

This Confidential Settlement and Release Agreement ("Agreement") is entered into as of June 30, 2011, by and among SunPower Corporation ("SunPower"), EchoFirst, Inc. (formerly known as PVT Solar, Inc.) ("EchoFirst"), and Defendants Mark Mrohs, Anish Shah, and Sasan Vossoughi (collectively, the "Individual Defendants"). SunPower, EchoFirst, and the Individual Defendants, together, are referred to as the "Parties," and each, individually, is referred to as a "Party." This Agreement shall be binding upon the Parties and their respective principals, agents, employees, officers, directors, predecessors and successors, subsidiaries and parents, investors, assigns, and insurers.

WHEREAS, on November 16, 2010, SunPower filed a civil action against EchoFirst (then PVT Solar, Inc.) and Defendants Mrohs, Shah, and Vossoughi, entitled *SunPower Corporation v. PVT Solar, Inc. et al.*, in the Superior Court of California, Santa Clara County, Case No. 1-10-CV 187278 (the "Case");

WHEREAS, on November 18, 2010, the Court (the Hon. Kevin J. Murphy) issued an Amended Temporary Restraining Order, Evidence Preservation Order, and Order to Show Cause re: Issuance of Preliminary Injunction against the Individual Defendants;

WHEREAS, on or about December 16, 2010, the Court (the Hon. Kevin J. Murphy) entered a Stipulation and Order Regarding Preliminary Injunction against the Individual Defendants;

WHEREAS, SunPower, EchoFirst, and the Individual Defendants wish to compromise, resolve, and settle all actual and potential possible disputes and claims, known or unknown, which any Party may possess against the other, including all claims that were or could have been asserted by SunPower, EchoFirst, and/or the Individual Defendants (including any potential cross-complaint or counter-claims), subject to the terms and conditions of this Agreement;

NOW, THEREFORE, in consideration of the promises and mutual covenants contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1.   <u>Consideration</u>.

    a.   <u>Dismissal With Prejudice of the Case.</u>  Within twenty-four (24) hours of the Effective Date of this Agreement, the Parties, through their counsel, shall execute the Request for Dismissal with Prejudice, attached hereto as <u>Exhibit A</u>.

    Within fifteen (15) business days of executing this Agreement, and provided that payment under Section 1(b)(i) of this Agreement has been made in full, SunPower shall file the fully-executed Request for Dismissal with the Superior Court of California, County of Santa Clara.

EXHIBIT H

   b. <u>Cash Payment.</u> EchoFirst agrees to pay to SunPower a total cash payment of Three Hundred Eighty Thousand U.S. Dollars ($380,000) as follows:

      i. One hundred eighty thousand U.S. Dollars ($180,000) to be paid within ten (10) business days of the Effective Date of this Agreement;

      ii. Fifty thousand U.S. Dollars ($50,000) to be paid within one (1) year of the Effective Date of this Agreement;

      iii. Fifty thousand U.S. Dollars ($50,000) to be paid within two (2) years of the Effective Date of this Agreement; and

      iv. One hundred thousand U.S. Dollars ($100,000) to be paid within three (3) years of the Effective Date of this Agreement.

   c. <u>Payment of EchoFirst Equity.</u> EchoFirst shall issue SunPower a warrant to purchase One Hundred Thirty Thousand (130,000) shares of common stock, substantially in the form attached hereto as <u>Exhibit B</u>, which shall include the following: (i) a seven (7) year term; (ii) that it shall only be exercisable upon the earlier to occur of (a) a Liquidation Event (as defined in EchoFirst's Certificate of Incorporation) or (b) EchoFirst's initial public offering; (iii) an exercise price of $.407 per share; and (iv) that upon the holder exercising the warrant, EchoFirst may, at its election, in lieu of issuing the shares for which the warrant is being exercised, pay to the holder cash in an amount equal to the number of shares exercised multiplied by the difference between the fair market value of the Company's common shares at the time of exercise less the exercise price.

     SunPower shall have twenty-four (24) hours from the Effective Date of this Agreement to review the language of Exhibit B and the Certificate of Incorporation of EchoFirst (and other documents necessary to confirm the relationship between Preferred Shares and Common Shares, and that the terms of Exhibit B and the Certificate of Incorporation accurately reflect the terms of this Section 1(c)). The Parties shall meet and confer over any issues related to the language in Exhibit B.

2.  <u>Continuing Obligations of EchoFirst and the Individual Defendants.</u> EchoFirst, the Individual Defendants, and their current and former officers, directors, employees, servants, agents, parents, and all persons in active concert and participation with any of them hereby agree:

   a. <u>Return and No Use of SunPower Data:</u> EchoFirst and the Individual Defendants affirmatively represent that they have returned all data and/or property belonging to SunPower that is within their possession, custody, and control, and/or any derivative works created through the access to and/or use of such SunPower data

EXHIBIT H

and/or property (the "SunPower Materials"). To the extent any additional SunPower Materials are discovered within the possession, custody, or control of EchoFirst and/or any of the Individual Defendants, EchoFirst and the Individual Defendants agree that such SunPower materials will be returned within forty-eight (48) hours of the discovery of such materials.

Notwithstanding the above, forensic copies of SunPower Materials maintained by counsel or outside forensic consultants for EchoFirst and/or the Individual Defendants shall be disposed of in a manner to be negotiated in good faith by counsel for the Parties.

b. <u>Non-Solicitation of SunPower Employees</u>: EchoFirst and the Individual Defendants shall:

    i. For a period of six (6) months following the Effective Date of this Agreement, as a measure to protect SunPower's trade secrets, EchoFirst shall not hire any then-current SunPower employee.

    ii. For a period of eighteen (18) months following the conclusion of the six (6) month period set forth in Section 2(b)(ii), above, not solicit or recruit, either directly or indirectly, any then-current SunPower employees to leave their employment, or attempt to solicit, recruit, or hire employees of SunPower. During this period, should EchoFirst offer a job to a then-current SunPower employee and should the SunPower employee accept, EchoFirst shall provide SunPower with five (5) business days advanced notice before the SunPower employee quits SunPower, so as to provide for an orderly exit from SunPower and to ensure return of all SunPower information by the departing SunPower employee.

    iii. Not elicit from current or former SunPower employees, during the EchoFirst job interview process or otherwise, any confidential, proprietary, and/or trade secret information of SunPower;

3. <u>Continuing Obligations of SunPower</u>. SunPower and its officers, directors, employees, servants, agents, parents, and all persons in active concert and participation with SunPower, hereby agree that, within five (5) business days of the date of this Agreement, SunPower will instruct its forensic consultant(s) to permanently destroy any and all materials provided by EchoFirst to SunPower during SunPower's and EchoFirst's prior Series A and Series B business discussions ("EchoFirst Diligence Materials") and that it shall not make any use of such information.

4. <u>Release of Claims by SunPower</u>. Other than for those obligations created by or arising out of this Agreement, SunPower, on behalf of itself and its principals, agents, employees, officers, directors, predecessors and successors, subsidiaries and parents,

EXHIBIT H

investors, assigns, and insurers, hereby irrevocably, unconditionally, fully and forever releases, acquits, and discharges EchoFirst, EchoFirst's principals, agents, employees, officers, directors, predecessors and successors, subsidiaries and parents, investors, assigns, and insurers, and the Individual Defendants from any claim, duty, obligation or cause of action relating to any matters of any kind, whether presently known or unknown, suspected or unsuspected, that it may possess arising from any omissions, acts or facts that have occurred up until and including the Effective Date of this Agreement.

5.  <u>Release of Claims by EchoFirst</u>.  Other than for those obligations created by or arising out of this Agreement, EchoFirst, on behalf of itself and its principals, agents, employees, officers, directors, predecessors and successors, subsidiaries and parents, investors, assigns, and insurers, hereby irrevocably, unconditionally, fully and forever releases, acquits, and discharges SunPower, its principals, agents, employees, officers, directors, predecessors and successors, subsidiaries and parents, investors, assigns, and insurers, from any claim, duty, obligation or cause of action relating to any matters of any kind, whether presently known or unknown, suspected or unsuspected, that it may possess arising from any omissions, acts or facts that have occurred up until and including the Effective Date of this Agreement.

6.  <u>Release of Claims by the Individual Defendants</u>.  Other than for those obligations created by or arising out of this Agreement, each of the Individual Defendants, on behalf of himself, and on behalf of his respective heirs, family members, executors, and assigns, hereby fully and forever releases SunPower from any claim, duty, obligation or cause of action relating to any matters of any kind, whether presently known or unknown, suspected or unsuspected, that he may possess arising from any omissions, acts or facts that have occurred up until and including the Effective Date of this Agreement.

7.  <u>Pursuit of Claims.</u>  Each Party acknowledges that he or it has not filed, initiated, or prosecuted (or caused to be filed, initiated, or prosecuted) any lawsuit (other than the Case), complaint, charge, action, compliance review, investigation, or proceeding with respect to any claim this Release purports to waive, and promises never to do so in the future, whether as a named plaintiff, class member, or otherwise.  If unbeknownst to the Parties, such a complaint, charge or lawsuit has been filed on his behalf, the Parties will use their best efforts to cause it immediately to be withdrawn and dismissed with prejudice.  If the Parties are ever awarded or recovers any amount as to a claim they have purported to waive in this Release, the Parties agree that the amount of the award or recovery shall be reduced by the amounts he was paid under this Release, increased appropriately for the time value of money, using an interest rate of 10 percent *per annum*.  To the extent such a setoff is not effected, the Parties promise to pay, or assign their right to receive, the amount that should have been set off.

8.  <u>Mutual Waiver by All Parties of the Single Claim Doctrine.</u>  With respect to claims that SunPower might assert against EchoFirst or the Individual Defendants in the future, such future claims shall be deemed to accrue at the time of those acts or omissions, or if such acts or omissions are reasonably unknown to SunPower, then upon discovery of those

EXHIBIT H

acts or omissions by SunPower. EchoFirst and the Individual Defendants agree to waive the benefits of, and not to assert as a defense or bar such claims, the applicability of the single-claim doctrine as described, for example, in *Cadence Design Systems v. Avant! Corp.*, 29 Cal. 4th 215 (2002).

With respect to claims that EchoFirst might assert against SunPower in the future, such future claims shall be deemed to accrue at the time of those acts or omissions, or if such acts or omissions are reasonably unknown to EchoFirst, then upon discovery of those acts or omissions by EchoFirst. SunPower agrees to waive the benefits of, and not to assert as a defense or bar to such claims, the applicability of the single-claim doctrine as described, for example, in *Cadence Design Systems v. Avant! Corp.*, 29 Cal. 4th 215 (2002).

9. Assertion of Non-Released Claims. The Parties agree that, in the event that SunPower or EchoFirst pursues claims pursuant to Section 8, above and/or any alleged breach of this Agreement, the Party asserting the claim shall provide written notice and shall provide the opposing party with thirty (30) days to cure the alleged violation.

10. Release of Unknown Claims and Waiver of Civil Code section 1542 by the Parties. The Parties expressly understand and acknowledge that it is possible that there may be unknown losses or claims arising from the acts and omissions of the Parties relating to the Case and/or any claims that were and/or could have been asserted in the Case. The Parties further understand and acknowledge that present losses or claims may have been underestimated in amount or severity. To the extent section 1542 of the Civil Code of the State of California (or similar provisions under the law of any other jurisdiction) may apply to this Agreement, each of the Parties has been advised by counsel concerning that section, has read and understands it, and hereby expressly waives all rights under that section, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

11. Confidentiality. The Parties and their counsel agree to maintain in confidence and not to disclose publicly any of the terms of this Agreement, except (a) as required by applicable law, regulation, or order or request of a court (including subpoena or document request), provided that the other Parties are given prompt written notice thereof and an opportunity to seek a protective order or other confidential treatment thereof, and provided further that the Party subject to such requirement of law, regulation, order or request cooperates fully with the other Party in connection therewith, and only such information is disclosed as is legally required to be disclosed in the opinion of legal counsel for the disclosing Party; and (b) on an as-needed and confidential basis to such Party's present and future accountants, counsel, tax preparers, senior management and Board of Directors, and

financial advisors, provided such Parties agree to maintain the confidential nature of this settlement to the extent permitted by law.

12.  No Right, Title, or License.  Each Party acknowledges that it has no right, title, or license in the data and/or property of any other Party.

13.  No Admission of Guilt or Liability.  Nothing in this Agreement shall be construed as an admission of wrongdoing, guilt, or liability by or on the part of any Party.

14.  Effective Date.  The Parties agree that this Agreement shall be effective immediately upon its execution by the Parties ("Effective Date").

15.  Attorneys' Fees.  In the event that either Party brings an action to enforce or effect its rights under this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs incurred in connection with such an action.

16.  Miscellaneous.

(a)  Governing Law.  This Agreement shall be governed by, and construed in accordance with the laws of the State of California.

(b)  Successors Bound.  This Agreement shall be binding upon the Parties' successors and assigns.

(c)  Construction.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to their fair meaning, and not strictly for or against any Party.  No Party shall be deemed the drafter of this Agreement.  The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties.  Each Party cooperated in, and was represented by counsel during, the drafting and preparation of the Agreement.  In any construction to be made of the Agreement, the Agreement shall not be construed against any Party.

(d)  Voluntary and Knowing Participation.  This Agreement is entered into freely and voluntarily by each Party.  The Parties acknowledge that they have had sufficient time and opportunity to consult with counsel and other advisors of their own choice in connection with the preparation and execution of this Agreement.  Each of the Parties executed this Agreement with full knowledge of its significance and with express intention of effectuating its legal consequences.

(e)  Entire Agreement.  This Agreement, and the Exhibits thereto, contain the entire agreement between the Parties with respect to the subject matter of this Agreement and supersede all prior oral or written understandings and agreements on the subject matter hereof, except as otherwise expressly set forth herein.

EXHIBIT H

Notwithstanding the foregoing, the SunPower confidentiality agreements executed by the Individual Defendants in connection with their employment with SunPower (*i.e.*, Defendant Mrohs' SunPower Employee Nondisclosure Agreement, Defendant Shah's SunPower Employee Nondisclosure Agreement, and Defendant Vossoughi's SunPower Agreement Concerning Proprietary Information and Inventions), as well as the SunPower Employment Termination Agreements executed by each Individual Defendant in connection with their respective departures from SunPower, are not superseded and remain in full force and effect.

(f)     Severability.   If any provision of this Agreement is for any reason held to be invalid, illegal, or unenforceable under applicable law in any respect, then: (i) such invalidity, illegality, or unenforceability shall not affect the other provisions of this Agreement; (ii) this Agreement shall be construed as if such invalid, illegal, or unenforceable provision were excluded from this Agreement.

In WITNESS WHEREOF, the Parties, through their duly authorized representatives, who by signing this agreement represent that they have authority to do so, agree to the foregoing as of the Effective Date:

Dated: June 30, 2011      By: _____
                                SunPower Corporation

Dated: June 30, 2011      By: _____
                                EchoFirst, Inc.

Dated: June 30, 2011      By: _____
                                Mark Mrohs

Dated: June 30, 2011      By: _____
                                Anish Shah

Dated: June 30, 2011      By: _____
                                Sasan Vossoughi

SUNPOWER CORPORATION V. PVT SOLAR, INC. *ET AL*.
SETTLEMENT AND RELEASE AGREEMENT                    7 of 9

EXHIBIT H

*intentionally blank*

SunPower Corporation v. PVT Solar, Inc. *Et Al.*
Settlement and Release Agreement

EXHIBIT H

Approved as to form:

DATED: June 30, 2011                PAUL, HASTINGS, JANOFSKY & WALKER, LLP

By: _____
                                    BRADFORD K. NEWMAN

                                    Attorneys for Plaintiff
                                    SunPower Corporation

DATED: June 30, 2011                COOLEY LLP

By: _____
                                    WENDY J. BRENNER

                                    Attorneys for Defendant
                                    EchoFirst, Inc.

DATED: June 30, 2011                ANDERIES & GOMES LLP

By: _____
                                    SHANE K. ANDERIES

                                    Attorneys for Defendants
                                    Mark Mrohs, Anish Shah, and Sasan Vossoughi

EXHIBIT H